NATIONAL CAR–BRAKE SHOE CO. v. TERRE HAUTE CAR & MANUF'G
Co. and others.

*(Circuit Court, D. Indiana.   January 30, 1884.)*

1. PATENTS FOR INVENTIONS—PARTIES IN ACTION AT LAW FOR INFRINGEMENT.
    In an action at law for infringement of a patent, all parties who participate in the infringement are liable, although some are simply acting as officers of a corporation; all parties who participate in a tort or trespass are liable, and a man cannot retreat behind a corporation and escape liability for infringements in which he actively participates.
2. SAME—CONSTRUCTION OF PATENT.
    It is for the court, as a matter of law, to construe a patent, and for the jury, as a question of fact, to determine whether it has been infringed, and the amount of damages that should be allowed.
3. SAME—BURDEN OF PROOF—DAMAGES.
    In an infringement suit, the burden is on the plaintiff to show the amount of damages he has suffered; and if he furnishes reasonably satisfactory evidence on that subject, he is entitled to substantial damages, otherwise to nominal damages.
4. SAME—EVIDENCE OF DAMAGE—LICENSE.
    On the question of damages, it is competent for a patentee to prove the prices at which licenses were granted under the patent while it was in force; but in order to be competent evidence of value, the prices agreed upon must be prices fixed with regard to the future, when there is no liability between the parties, and the parties not being subject to suits are presumed to act voluntarily, and therefore to make up their minds deliberately as to what would be a fair price.   Such arrangements, licenses thus granted, fees thus fixed, are competent evidence to consider in determining what the actual value of an invention is, and what the recovery ought to be for its use.
5. SAME—PAYMENTS MADE IN SETTLEMENT.
    It is not competent for a patentee to prove the prices paid for infringements already perpetrated; such settlements are not at all admissible on the subject of value.
6. SAME—AMOUNT OF DAMAGES.
    The value of an invention for which an infringer is liable is the value at the time of the infringement.   A man who has got a patent owns it as property, and if anybody sees fit to infringe it he is bound to pay for its fair value; and the fact that there is something else just as good or better does not entirely destroy its value, but may affect it.
7. SAME—CONFUSION OF GOODS.
    The doctrine of a confusion of goods has no application to a suit for infringement of a patent, especially where there is only a confusion of book-keeping and not a confusion of the articles themselves, the articles being incapable of mixture.
8. SAME—CONCEALMENT—PRODUCTION OF BOOKS.
    If a party shows an unwillingness to let the truth out, and keeps back facts and the means of getting at facts, in his power, then the jury is warranted in drawing the strongest possible inferences against him, which may be drawn from the evidence actually given in favor of the other party.   But if he comes forward with his books, furnishes all the evidence in his power, and is fairly candid in the matter, no inferences should be drawn against him, except such as are fairly drawn from the evidence adduced.
9. SAME—RECORD OF PATENT—NOTICE.
    Every one is bound to take notice of the existence of a patent, and of the rights of parties under it; like the record of a deed to real estate, the record of a patent at Washington is notice thereof to all the world.

Action for Damages for Infringement.

*Banning & Banning,* for plaintiff.

*Claypool & Ketcham,* for defendants.

WOODS, J., *(charging jury.)* This is an action by the plaintiff against the defendants claiming damages for the alleged infringement of a patent granted to James Bing, October 6, 1863, for an improvement in car-brake shoes. The burden of proof is upon the plaintiff to show the facts, so far as they are material, alleged in the complaint,—that it had a patent; that the defendants infringed it; and the amount of damages that it has suffered by reason of the infringement. The defendants are three—the car company and two individuals who are shown to be officers of the company. The action is in the form of a suit in trespass on the case, and consequently if all the defendants have participated in the infringement they are all liable, though the individuals were acting simply as officers of the company in doing it. All parties who take part in a tort or trespass are liable. A man cannot retreat behind a corporation, and escape liability for a tort in which he actively participates. So there is no question, probably, in the case but that all the defendants are liable, if any. There is no dispute that the plaintiff has a patent. The patent itself has been put in evidence, and is conclusive of the fact that the patent-office issued it to Bing, under whom the plaintiff claims. It is for the court to tell you what the claim of the party is in his patent, and what he acquired by the patent. It is for you, as a question of fact, to determine whether the defendants have, by anything that they have made, infringed the patent of the plaintiff.

The plaintiff in his patent makes two claims. The first is for the two parts of the brake, the shoe and the sole, adjusted together in a particular way described, for the purpose of producing a rotary motion. To this claim the rotary motion is essential, and any implement which does not produce the rotary motion is not an infringement of that claim of the patent. But there being two claims in the patent, an implement may infringe one and not the other; and if the defendants have manufactured an article which infringes either claim, the plaintiff is entitled to recover in the action for that infringement; and if it infringes both claims, of course the plaintiff is entitled to recover. I instruct you, on the authority of Judge DRUMMOND, who is my official superior in this circuit, as well as upon my own judgment of the law of the case, and of the proper interpretation of the patent, that the second claim does not embrace the idea of rotary motion, and may be violated by an implement which is not designed to produce, and does not in fact produce, the rotary motion. The second claim is simply for a combination of the two parts of the brake already mentioned,—the shoe and sole,—and of the clevis and bolt made in the substantial form described in the patent; but it is not necessary, as I have said, that it shall be so made as to produce rotary motion. It is simply for the combination of those parts, in substantially the way they are described, without reference to rotary mo-

tion, for the accomplishment of whatever benefits will result from the combination of the parts in that way. If the benefit be the ease in taking apart and putting together, or taking out old pieces and putting in new, or any other benefit that results from that combination, whether described in the letters patent or not, the inventor has the right to the benefits of the combination that he has thus produced. As already stated, it is for you to determine, as a question of fact, whether the implement manufactured by the defendants, which I believe is conceded to be in the form of this red model which I take in my hands, designated "J. S.," does infringe the patent of the plaintiff in respect to either claim,—the combination for rotary motion, and the general combination of the four parts, without reference to rotary motion. Now, it is argued by one side that this piece resting squarely down upon the shoe, and not pushed forward by this toe, will not produce rotary motion, and therefore does not violate this patent in respect to the claim for rotary motion. On the other hand, it is argued that this will produce rotary motion on the principle the plaintiff contends for. I leave that to you as a question of fact. If this implement, constructed in this way, will produce the rotary motion to some extent,—it may not be to the full extent of a model constructed in the form of the patent,—it is a violation of the first claim of the patent. If it will not produce rotary motion at all, then it is not a violation of that claim.

The next question is whether this model is substantially a combination of the same parts as are included in the second claim of Bing's patent. In order that there be an infringement, it is not necessary that the parts be exactly alike. If they are substantially the same in construction, and produce substantially the same result in substantially the same manner, it is an infringement. It takes more than a mere difference in form to escape an infringement. If a man has procured a patent—a combination patent—consisting of certain parts, one of which, for instance, is a clevis like that, coming down in two arms upon the outside of the ears of the brake head, the question in this case is whether the substitution of a single strap like this escapes that patent. If this strap was a thing already known to mechanics as something that, in this connection, would produce substantially the same result as the clevis, in the same connection,—a mere substitution of one thing that is equivalent to the other,—it then must be treated as an infringement. The defendants do not escape if this is substantially the same, and was a thing known to mechanics already, and substituted merely to produce substantially the same result as the clevis; and if not involving any invention, it is a mere mechanical equivalent. Such a change does not enable a party to escape liability for infringement. The question is for you. Counsel have argued it before you and I shall not enlarge upon it. It is for you to say whether there is a substantial change in anything more than mere form from that to this. If there is no substantial

change, no change except in form, then this should be treated as an infringement of the plaintiff's second claim.

Considerable has been said in argument, and some evidence adduced, in reference to decisions made by Judge DRUMMOND, of this circuit, that a certain brake-shoe used by the Illinois Central and the Lake Shore railroads, which are claimed to be substantially identical, even in form, with this model, are an infringement of the plaintiff's patent. I say to you that such decisions have been made; but they were decisions in particular cases, made, of course, with reference to the evidence adduced in those cases; and while they are entitled to weight upon your minds, they are not absolutely conclusive upon you. I leave it to you, as the law leaves it, a question of fact whether this is an infringement of that; that is, whether the brake-shoe represented by this model is an infringement of the Bing patent. You should hold that it is, unless there is some departure more than in mere form; that is, unless the result accomplished by this is by a substantially different contrivance, operating in a substantially different way from the Bing brake-shoe. If you find that the implement made by the defendants, of which this is conceded to be a model, is an infringement of the plaintiff's patent, then will arise the question, which counsel have more earnestly argued before you, and which is for you, perhaps, the more important question in the case—what damages shall be awarded? The burden of proof is upon the plaintiff to show the amount of damages that he has suffered, and to furnish the jury reasonably satisfactory evidence to enable them to reach a conclusion on that subject; and, if the plaintiff has furnished you that proof, it is your duty to award him substantial damages. If there has been an infringement, he is entitled to nominal damages anyway; but if the evidence shows that the patent is of real value, then he is entitled to substantial damages, according to the proof. As a general proposition, the weight that testimony shall have is a question for the jury; but the court may lay down general principles which will enable the jury to understand how the testimony should be weighed. I instruct you that it is competent for a patentee, in order to enable the jury to measure his damages, to prove contract prices at which licenses had been granted under the patent while it was in force, but that it is not competent for him to prove the prices paid for infringements; that is to say, payments made in settlement of infringements already perpetrated. In order to be competent evidence of value, the prices agreed upon must have been fixed with regard to future use, when, there being no liability between the parties, they are presumed, on both sides, to have acted voluntarily, and therefore to have made up their minds deliberately as to what was a fair price. Such arrangements, licenses thus granted, fees thus fixed, are competent evidence to consider in determining what the actual value of an invention is, and what the recovery ought to be for its use. But settlements for past transactions, where the parties are

liable to suit if they do not pay, I instruct you, are not admissible as evidence for the plaintiff upon the subject of value.

Now, there is in evidence the deposition of Mr. Shaw, and counsel have discussed before you the weight that it should have. They dispute whether Mr. Shaw, in this deposition, has spoken about payments made for past use, or a price agreed upon for future use, or payments partly for past and partly for future uses. I leave that to you. The testimony is before you, and it is for you to say what it means, and what effect you will give it in this respect.

Other evidence has been introduced as to the value of the patented brake-shoe as compared with others, and some question is made of what the comparison should be. The plaintiff's counsel insists that no comparison shall be made with any implement that had not been in use, or been invented,—if it was a patented implement,—before the patent sued upon was issued. I am not able to agree fully with that position. The action being for damages, (not profits,) I suppose the defendants are liable—if they are liable for anything—for the value of the invention at the time they appropriated it. A patent issued on a particular day for a particular contrivance, might, with reference to the business of the community, and the uses to which it could be put, be worth a given sum on that day and at that time. If it was the only contrivance that could be used to accomplish the purpose for which it was adapted, it would of course constitute a monopoly, and would command the market for whatever price should be fixed upon it. If shortly after it was invented and put into use some new contrivance, entirely different, and not infringing it in any respect, but useful for accomplishing the same purpose, should be invented and brought into use, it is evident that competition would arise, and the first patent, instead of then being the sole occupant of the field, would have to meet the competition of the new, and might not be worth so much as when it was first produced. I think the jury have the right—and I so instruct you—to look to the facts as they existed at the time of the infringement. If the patent was useful when invented, and was an improvement of actual value over what then existed, the fact that something else was invented afterwards that was better than it, would not take away its entire value, so that the one who should prefer to use it or manufacture it could say, "I shall pay nothing for that because I might have taken something better." A man who has a patent owns it as property, and if anybody sees fit to infringe he is bound to pay for its fair value; and the fact that there may be something else just as good as that or better does not destroy its value, but it may affect your judgment of what the actual value is. The fact that this company chose to make this implement, with the combined parts,—that is, if you find those combined parts are an infringement of this patent,—is conclusive upon the company that they regarded it as a valuable instrument, thus combined, and its actual value in use, under the circumstances existing at the

time, the value of that combination, which constitutes the patent, should be awarded to the plaintiff in damages; but the existence of these other implements, patented or unpatented, is a matter that you have a right to consider in arriving at what your judgment of its actual value shall be. Of course, if the rival implements are patented, the existence of them could have no effect, or but little effect, upon the value of the invention in suit, except as they furnished competition in the market. If there existed some contrivance that was not patented at all, or that was free to everybody, which subserved substantially the same purpose, that might still further in your minds depreciate the value of this; but the mere fact that such a thing did exist would not destroy entirely, and could only be treated as modifying, the value of this at the time. In this connection I will refer to a point to which counsel have called my attention. It is claimed by plaintiff's counsel that the burden of proof is on the defendants to show that those implements which were brought forward are free if they want to claim the benefits of them as free implements. If they are patented, then of course the parties resorting to them would have to pay royalty for their use, and if they chose to go to this instead, they should pay royalty on this, the fair royalty, whatever it is. But counsel for defendants have asked me to say to you, that if, during the examination of the witnesses, it was conceded by the counsel for the plaintiff that any one of these implements was not patented, you have a right to accept that concession and treat it as proof of the fact that that particular one was not patented; and they claim that the one which has been called or designated as the reversible sole was admitted by counsel for the plaintiff not to be covered by any patent,—not to have been patented,—and therefore you are entitled to treat that as an unpatented implement; and so far as the existence of that in the market could have affected the fair value of this, you should consider it as a free instrument. I instruct you that a concession made by counsel may be treated by the jury as a fact against the party whose counsel made the concession.

There is one other point that I will instruct you about. In his opening statement the plaintiff's counsel claimed to you that if he made proof that these defendants constructed a brake which was a violation of his client's patent, and showed that they had constructed a certain number of brakes altogether, the burden of proof would then fall upon the defendants to show just how many were constructed after the form of the Bing patent; and that unless they offered that proof you should find that all made by them were constructed in that way, on the principle of the confusion of goods; that is, that a party who mixes his goods with another man's, so that they cannot be separated, is liable to lose his own goods with those that he commingles with them. That rule does not apply in this case, for the manifest reason that whenever you go and look at a car you can tell what brake is on it. If there is any confusion, it is confusion in the book-keep-

ing, and not of the goods. The brakes could not be mixed; one brake is always separable from another; and the burden is upon the plaintiff to show how many articles were made in infringement of its patent; and the plaintiff is entitled to recover for the infringement of only such number as upon the evidence you are satisfied were made by the defendants. It is only in a case of this kind,—and I do not mean to intimate that there is any cause for invoking the rule here; I leave that solely to you, as you are the judges of questions of fact. If a party shows an unwillingness to let the truth out, and keeps back facts, and the means of getting at facts in his power, then the jury is warranted in drawing the strongest possible inferences which may be drawn from the evidence actually given in favor of the other party; but further than this, there is no doctrine that can have any applicability in this case, and I do not say that this doctrine is applicable; I do not say to you that the defendants have manifested any disposition to keep back any facts in their power. If, when they made these implements, they actually knew they were violating somebody else's patent, and purposely omitted keeping any record of how many violations were perpetrated, then you would be entitled to draw the strongest inferences against them, if there were any evidence of that fact. But if they have brought forward their books, and furnished all the evidence in their power, and have been fairly candid in the matter, as much so as men may reasonably be expected to be when their interests are heavily at stake, you would not be justified in drawing any inferences, other than such as may fairly be drawn from the evidence adduced. In reference to this subject of knowledge of the patent, I say to you that every one is bound to take notice of the existence of a patent, and the rights of parties under it, and is held responsible to pay for every infringement that he actually perpetrates, just as if he did know it. It is like the record of a deed; the record of patents at Washington is notice to every one, just as your title deeds on the records of the proper county are notice to all the world of your title. But, while a man is held to have this constructive knowledge, he may be in actual ignorance of the fact; and so if these defendants were actually ignorant of the existence of this patent at the time they made the implements which are claimed to be an infringement, they should not be deemed subject to criticism or reproof because they have come here with their books in such shape that they cannot tell from their books what infringements they did commit. It is only when a man consciously does wrong, and so does it as to conceal the facts, that he is subject to such criticism and to this harsh rule of evidence.