JOHN M. BURTON *vs.* BURTON STOCK CAR COMPANY.

Suffolk.     March 15, 1898. — June 22, 1898.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Patent — License — Compensation for Use — Inference of Promise to Pay — Ruling of Auditor — Evidence — Expert — Trial.*

Before the granting of a patent an inventor has a qualified property in his invention which is assignable and which may have a value and serve as a consideration for a promise to pay for a transfer and sale.

A license to use an invention may be given before the granting of a patent therefor, and, if acted on by applying the invention to machines or mechanisms constructed before the granting of the patent, will avail to protect the licensee in their use afterwards. Such license, and an implied promise to pay reasonable compensation therefor, may be inferred from circumstances.

Evidence that the plaintiff's brother, who was a director and officer of a corporation employing the plaintiff, was aware of the use by the corporation of the plaintiff's inventions and of his claim for reasonable compensation for their use; that officers of the corporation wrote to and talked with the plaintiff with reference to such use and claim; that directors of the corporation knew that it was using his inventions and that he would claim compensation therefor; that the plaintiff, at the request of officers of the corporation, while still in its employ, assigned to it his patents afterwards obtained for the inventions and was paid the expense of perfecting the inventions and procuring the patents; and that the plaintiff then asserted that he did not waive his right to royalty for the former use of the inventions, but should insist upon future payment, and was assured that his claim would be adjusted later, will warrant the inference, in an action against the corporation, of an implied promise to pay compensation for the use of his inventions, in the absence of evidence that he agreed to license such use gratuitously.

The report of an auditor, in an action to recover compensation for the use of inventions, stated that he ruled that the plaintiff was entitled to recover reasonable

compensation. He had been asked to rule, as matter of law, that the plaintiff could not recover any compensation for the use of his inventions while he was in the defendant's employ. *Held,* that the ruling was to be taken to mean that the plaintiff was not debarred from recovery on the ground stated; and that, if it meant more than that, it must be treated as a finding of fact, or as a statement that the plaintiff was entitled to recover provided the facts reported would warrant it.

An expert witness is rightly allowed to explain, in an action to recover compensation for the use of inventions, the operation and supposed advantages of the inventions, the letters patent and models of which are before the jury.

It is within the discretion of the judge, in an action to recover compensation for the use of inventions in the construction of stock cars, to permit a witness to give an opinion of the value of the use of such inventions, if he testifies that he has taken out between forty and fifty patents for stock and cattle cars, has made out specifications for these patents, is pretty familiar with the devices used on stock cars, has had ten or twelve years' experience with stock cars outside of his experience as an inventor, has held several offices in the defendant stock car company, and had full charge of the construction of its cars for five or six years, and is familiar with other kinds of stock cars.

That the letters patent for inventions were not actually issued when the defendant used the inventions can be considered by the jury in estimating the weight to be given to the opinion of an expert witness as to the value of such use, even if the defendant did not choose to call the attention of the witness to the fact.

CONTRACT, to recover compensation for the use of patented inventions in the construction of stock or cattle cars. At the trial in the Superior Court, before *Maynard,* J., the jury returned a verdict for the plaintiff; and the defendant alleged exceptions. The facts appear in the opinion.

The case was argued at the bar in March, 1898, and afterwards was submitted on briefs to all the justices.

*S. J. Elder & R. F. Herrick,* for the defendant.

*G. L. Huntress,* for the plaintiff.

FIELD, C. J. It appears that all the acts done by the defendant in building and rebuilding cars, as charged in the first, second, and sixth counts of the declaration, upon which alone the plaintiff relied, were done between the dates of the several applications for letters patent and the issue of the patents. These counts erroneously averred that these acts were done while the plaintiff was the owner of the letters patent, but no objection is urged on account of the variance.

We have first to consider whether upon the evidence the plaintiff was entitled to go to the jury. It must be treated as settled that before the granting of a patent an inventor has a qualified property in his invention which is assignable, and which

may have a value, and thus serve as a consideration for a promise to pay for a transfer and sale. *Gayler* v. *Wilder*, 10 How. 477. *Railroad Co.* v. *Trimble*, 10 Wall. 367, 379. *Nicolson Pavement Co.* v. *Jenkins*, 14 Wall. 452. *Hendrie* v. *Sayles*, 98 U. S. 546. *Dalzell* v. *Dueber Watch Case Manuf. Co.* 149 U. S. 315. *Jones* v. *Sewall*, 6 Fisher's Pat. Cas. 343. *Binney* v. *Annan*, 107 Mass. 94. *Somerby* v. *Buntin*, 118 Mass. 279. *Lamson* v. *Martin*, 159 Mass. 557, 562. *Clum* v. *Brewer*, 2 Curt. C. C. 506, 520. This doctrine is not impugned in *Marsh* v. *Nichols*, 128 U. S. 605, or *Durham* v. *Seymour*, 161 U. S. 235, as we understand these decisions.

It follows from this that a license to use an invention may be given before the granting of the patent, and that if acted on by applying the invention to machines or mechanisms constructed before the granting of the patent, it will avail to protect the licensee in their use afterwards. Such license may be inferred from circumstances; and an implied promise to pay reasonable compensation therefor may also be inferred. *McClurg* v. *Kingsland*, 1 How. 202, 208. *United States* v. *Palmer*, 128 U. S. 262. *Solomons* v. *United States*, 137 U. S. 342.

The circumstances of the present case were sufficient to warrant a finding of such license by the plaintiff, and of such implied promise to pay by the defendant, and of the sufficiency of the consideration for such implied promise. The plaintiff was in the employment of the defendant during the period in question. The auditor found that during this time he attended regularly to the duties of his various positions, and did not use either the material or means of the defendant in taking out the letters patent; that he personally paid all the expenses of procuring them, and constantly asserted his right to the personal ownership thereof; and that all of these improvements were used by the defendant on more or less of its cars. It is not now contended that the defendant became the owner of the improvements by virtue of its employment of the plaintiff. *Hapgood* v. *Hewitt*, 119 U. S. 226. *United States* v. *Palmer*, 128 U. S. 262. *Lane & Bodley Co.* v. *Locke*, 150 U. S. 193, 198.

In reference to the matter of compensation, the auditor found " that the plaintiff's brother, who was throughout the time of the plaintiff's employment a director of the defendant corporation,

and during that period also was consecutively treasurer, super-intendent of construction, and assistant general manager of the defendant, was aware of the use by the defendant of the plaintiff's improvements, and of his claim for reasonable compensation for such use; that both he and the president of the defendant corporation wrote to and talked with the plaintiff with reference to such use, and his claim for compensation at various times, and that several of the directors of the defendant knew that the defendant was making use of the plaintiff's improvements, and that the plaintiff would claim compensation therefor." He also found that in 1893 the plaintiff, while still in the defendant's employment, assigned to the defendant all but one of his patents, and was paid therefor by the defendant the expense to which he had been put in perfecting the improvements and procuring the patents; that the plaintiff was requested by certain officers of the defendant so to assign them, " and that the plaintiff at that time asserted to said officers that he did not waive his right to royalty for the former use of his improvements by the defendant, but should insist upon future payment therefor; that the plaintiff was assured by said officers that his claim would be adjusted at a later time." There was no evidence, so far as appears, that the plaintiff agreed to license the use of his improvements gratuitously, and in the absence of such an agreement an implied promise to pay might be inferred from the above facts. Walker, Patents, (3d ed.) § 312.

The expression in the auditor's report, that he rules that the plaintiff is entitled to recover reasonable compensation, is not to be taken as a ruling that, as matter of law, the facts reported necessarily entitled the plaintiff so to recover. He had been asked to rule, as matter of law, that the plaintiff could not recover any compensation for the use of his improvements while he was in the defendant's employment, and the ruling seems to mean that he was not debarred from recovery on the ground stated. If it means more than this, it must be treated as a finding of fact, or perhaps as a statement that the plaintiff is entitled to recover provided the facts reported would warrant it. There was no motion to recommit the report for a more explicit statement by the auditor, and no exception was taken which called special attention to this expression. It becomes unneces-

sary to consider whether, upon the auditor's report, an express promise was or could be found, or to deal further with the criticisms upon it.

The course of the trial was as follows: " Plaintiff's counsel in opening stated that he would rely upon the auditor's report, and rest upon it as to all matters excepting as to the question of the amount to be paid for the use of the inventions and devices declared upon, and that upon this point he would put in such further evidence as he wished, and then rest, reserving the right, with the court's permission, to introduce evidence in support of the auditor's report at the close of the defendant's case if he so elected."

The auditor's report recites as follows: " The plaintiff introduced evidence tending to show that, by the use of the plaintiff's improvements, the defendant could obtain a royalty of $20 per car for the use of its patents on stock cars, and claimed that the plaintiff should recover of the defendant at that rate for each car used by the defendant, and built under the plaintiff's patents. But I find that the defendant owned many patents which entered, more or less, into the construction of the cars on which the plaintiff's improvements were used, and that the control and use of all these patents gave the defendant a standing and market which could not be gained by the use of the plaintiff's improvements alone ; and in fixing the compensation of the plaintiff, I have also taken into consideration the defendant's evidence as to the decreased earning capacity of patent stock cars during the later part of the time covered by the plaintiff's claim." The auditor found that the fair price which the plaintiff was entitled to recover was five dollars per car.

Various questions of the admissibility of the testimony of witnesses at the trial are presented to us. These may be divided into two classes. The first class relates to the explanations which a witness was allowed to give of the operation and supposed advantages of the plaintiff's improvements. The letters patent themselves, with models, were before the jury. The witness was rightly allowed to testify as an expert, so far as the above matters were concerned. The specifications in the letters patent were long, and might not be understood readily by the jury upon an examination or reading of them. The salient fea-

tures might be brought out by a qualified witness, having the specifications and models before him. We do not see that the witness's answers went beyond what was permissible, or assumed to decide any question of law. No doubt the extent of the inventions patented must be determined by the specifications. The improvements as actually used, and the operation of them in a car in use, might all be explained to the jury, so that their adaptation to be practically used, and their advantages, if any, could be seen and understood. And this, to some extent, might involve an explanation of features not included in the plaintiff's improvements, in order to show how the latter would be available for use in connection with them.

The same witness was then allowed, against the objection and exception of the defendant, to answer the following questions: " What would be a fair compensation for the company to pay for the privilege of constructing cars under patent No. 408,691, the so called hood door? " " What would be a fair compensation for the company to pay for the privilege of constructing cattle cars which should embrace the door and the tilting troughs, as claimed in patent No. 497,945? " He answered, $25 per car.

The jury found for the plaintiff, and assessed damages in the sum of $20,962.46. The exceptions, however, recite as follows: " On the defendant's motion for new trial, the court subsequently ordered this verdict to be set aside, unless the plaintiff would consent to remit so much thereof as exceeded $10,934.60. The plaintiff consented to remit, and the verdict now stands at $10,934.60, which represents five dollars per car, with interest."

As the verdict stands in damages for only the amount found by the auditor, it is improbable that the ruling of the court on the competency of the foregoing questions, and the answer of the witness, if erroneous, did any real harm to the defendant. There is hardly a possibility that the answer of the witness influenced the court in its determination of the amount to be remitted. The exceptions recite: " The witness was then examined as to his qualifications to testify as a patent expert, and testified that he had taken out between forty and fifty patents for stock and cattle cars; that he had sometimes made out spe-

cifications for these patents; that he was pretty familiar with the devices used on stock cars; that he had had ten or twelve years' experience with stock cars outside of his experience as an inventor; that he had been at different times treasurer, assistant general manager, and superintendent of construction of the defendant company; that he had full charge of the construction of cars for the defendant company from 1882 up to 1887 or 1888; and that he was familiar with other kinds of stock cars." We cannot say that the court was not warranted by the evidence in deciding that the witness was qualified to give an opinion of the value of a license to use the inventions of the plaintiff if the inventions had been actually secured by letters patent at the time when the defendant used them, and if an opinion concerning such value was competent evidence. It is true that the value of a license to use inventions before letters patent have been actually issued, but after applications for letters patent have been made, might not be exactly the same as if the letters patent had been actually issued before the inventions were used, because the defendant would not enjoy the same protection against the use by other persons in the former case as in the latter; (*Rein* v. *Clayton*, 37 Fed. Rep. 354;) but that was a fact in regard to which the witness might have been interrogated by the defendant's counsel, and the objection to the questions by the defendant was not put on the ground that the questions called for an opinion upon the value of the use of the inventions under letters patent, as distinguished from the value of the use under applications for letters patent which afterwards were issued. Inventions are of all sorts, and it is very difficult for a jury to estimate the value of the use of any invention either before or after the issue of letters patent. We are of opinion that, in the discretion of the court, a witness with the qualifications shown in this case might be permitted to give an opinion of the value of the use of inventions relating to stock and cattle cars. *Sturgis* v. *Knapp*, 33 Vt. 486, 531. *Butler* v. *Mehrling*, 15 Ill. 488. *Brady* v. *Brady*, 8 Allen, 101. *Vandine* v. *Burpee*, 13 Met. 288. *Beale* v. *Boston*, 166 Mass. 53, 56. The fact that the letters patent were not actually issued when the defendant used the inventions could be considered by the jury in estimating the weight to be given to the opinion of the witness in its appli-

cation to the case before them, even if the defendant did not choose to call the attention of the witness to the fact. No evidence appears of any use of the inventions by other persons than the defendant.                   *Exceptions overruled.*