**DYSART et al. v. REMINGTON RAND, Inc.**
Nos. 3978, 3979.

District Court, D. Connecticut.
July 11, 1941.

See, also, 32 F.Supp. 477.

Robert P. Butler and Arthur E. Howard, Jr., both of Hartford, Conn., for plaintiffs.

George H. Cohen, of Hartford, Conn., for defendants.

CLARK, Circuit Judge (sitting as District Judge pursuant to statutory designation).

As the finding herewith indicates, the questions whether Birney Dysart was the original inventor and owner of the automatic credit balance invention here in issue and whether the Dalton Company agreed to pay for its use are basic and crucial. But these are issues of fact, and the evidence to my mind settles them in plaintiffs' favor beyond doubt. The declarations, written and oral, of Dysart, admissible under Conn.Gen.Stat.1930, § 5608, as amended, Supp.1939, § 1408e, are too detailed, complete, circumstantial, and natural to permit of the conclusion that they represent a concocted story, long planned and carefully worked out. There are voluminous written entities, as well as oral declarations thoroughly established by the careful and persuasive testimony of both Mrs. Dysart and Mr. Rippey, the patent lawyer of long experience; the facts covered by them in turn check with much of the other testimony, oral and written, and, indeed, are supported as to details, e. g., of happenings at conferences, by defendant's witnesses; and there is the independent testimony of Rippey as to facts of his own knowledge which alone would be sufficient to make out the plaintiffs' case.

Though defendant has pleaded a general denial, yet that has to find practically its sole support in the testimony of its chief witness, Harry Landsiedel, former vice-president and president of the Dalton Company, now vice-president of defendant. As a matter of fact, Landsiedel by acts and by testimony furnishes substantial support to the plaintiffs' case. Starting with his original direction to Rippey to make application for the patent in Dysart's name, his request to Dysart for protection of the company for the German patent rights, his signing of two instruments of patent transfer from Dalton to defendant without claim of this right, his failure to respond to Dysart's assertion in the letter of July 16, 1928, of his own past position, and his final acknowledgment on the witness stand that he had always considered Dysart the inventor of this device, all strongly uphold the plaintiffs' contentions. Against this we have only his failure to recollect conferences and conversations confirming the agreement to pay for the use of the patent, and the more or less indirect suggestion that he did not know of Dysart's claim until 1928. Nowhere is there a forthright denial of the agreement or his knowledge. His demeanor on the witness stand was hesitant and troubled, showing the stress he admitted he had been under from 1928 on from the criticism by defendant's officials because of his

handling of this matter. To the extent that his testimony is claimed to conflict with that offered on behalf of the plaintiffs, I have no hesitancy in rejecting it.

Other testimony on this issue came from Dalton and defendant employees to show negatively that they did not know of the Dysart arrangement, and further that much time was spent by the Dalton engineering staff in drawing plans and perfecting the Dysart device. It was conceded, however, that Dysart's original disclosure contained the idea, so that a competent engineer could develop it on paper; and it was understood by all from the time Dalton planned to make use of the device that the Dalton staff was to prepare the drawings, and that the Dalton attorney was to apply for the patent. There was also testimony from officials of the defendant company showing their lack of knowledge of the Dysart claim before 1928, as well as their strong feeling against it and their vigorous measures to fight it on many different fronts. This suggests that they, too, had relied overmuch on Landsiedel, and had been misled by a lack of complete frankness on his part; but I see nothing in all this to impugn the essential veracity of the plaintiffs' case.

■ That the agreement is indefinite as to the value of the use does not destroy its effect; for the basis of recovery here is a promise implied in fact to pay for the reasonable value of the use made of the invention. The effect of the agreement is to show that the use was not donated or otherwise intended to be uncompensated; it thus is the foundation of the implied promise. Butler v. Solomon, 127 Conn. 613, 18 A.2d 685.

■ The plaintiffs' case being thus made, it remains to consider those of defendant's defenses left open to it by Judge Moscowitz's ruling of March 8, 1940. The claims of shop right or license or equitable or other title, based more or less on Dysart's position as an officer of the company when he made the invention, all fall with the above findings on the plaintiffs' own case. Dysart was an executive, and not the type of employee against whom shop rights are most naturally to be imputed; and the course followed with reference to the previous inventions made by him demonstrated that neither such rights nor any form of title was a customary part of his obligation to his company. And the finding of the agreement completely negatives any such

claim. See Heywood-Wakefield Co. v. Small, 1 Cir., 87 F.2d 716, certiorari denied 301 U.S. 698, 57 S.Ct. 925, 81 L.Ed. 1353; White Heat Products Co. v. Thomas, 266 Pa. 551, 109 A. 685; Burton v. Burton Stock-Car Co., 171 Mass. 437, 50 N.E. 1029; McNamara v. Powell, 168 Misc. 806, 7 N.Y.S.2d 141, modified and affirmed 256 App. Div. 554, 11 N.Y.S.2d 491; United States v. Palmer, 128 U.S. 262, 9 S.Ct. 104, 32 L.Ed. 442.

■ Finally, there is the defense of fraud and estoppel, based on Dysart's failure to make an issue of his patent claim at the time of defendant's purchase of the Dalton assets in 1927. But I cannot find any obligation or even any occasion for Dysart to present or press his claim at that time. Landsiedel, who, as I have found, was at all times thoroughly familiar with the Dysart situation, was making all the arrangements for the sale and kept himself in charge of all details thereof. He seems to have held out the hope that he would take all the old officers over to the new concern with him; at any rate, he himself at once became an official of defendant. It would seem rather unnatural in view of this situation for Dysart to have gone over Landsiedel's head, so to speak, to have made his claim to some of defendant's officials, with whom he had no connection or relations. The only possibility of an obligation on his part appears in connection with his various certifications made to Ernst & Ernst, the accountants, on February 21, 1927. But these appeared to be formal auditing details, not apt to cover the kind of arrangement he had had with James L. Dalton and Landsiedel; and it is not surprising that he, a layman, did not think of this as a contract "of a speculative nature for material or other items." Had it been suggested, it would undoubtedly have been offset by the value of the patent right it covered, and would not have affected the 60 million-dollar balance sheet or 50 million net worth of the new company. An inference of an intent to defraud on Dysart's part does not seem justified. Compare O'Connor v. Ludlam, 2 Cir., 92 F.2d 50, 53, certiorari denied 302 U.S. 758, 58 S.Ct. 364, 82 L.Ed. 586. In any event, this certification did not affect the sale, which had already been completed and announced to the company stockholders, together with their rights to participate in the new company by exchange of stock. This defense is a late development in this

controversy; until this action, defendant has relied on its conviction that it has a shop right or equitable title in the invention. I conclude that this defense, like the others, is unproven.

The rulings on the admission of evidence at the trial, as well as the denial of the motion to dismiss the executrix's action, are hereby confirmed. Objection was made that the declarations of the deceased were not admissible in favor of plaintiffs other that Mrs. Dysart as executrix and legatee; but this was overruled on the authority particularly of Pixley v. Eddy, 56 Conn. 336, 15 A. 758, where the statute, Conn.Gen.Stat.1930, § 5608, was held to make declarations of a decedent admissible for and against an assignee of a distributee, though it does not extend to purchasers by contract from the deceased. And the further statute, § 5609, referring to written memoranda, explicitly covers the case of those claiming title under or from the decedent. Plaintiffs' objections to certain answers of the witness Bean in his deposition, as claimed by defendant, are overruled.

Interlocutory judgment that defendant account for the value of the use of the invention is therefore directed. This appears to be a case appropriate for the appointment of a master by the Court under Federal Rule 53. If the parties cannot agree on the form of the judgment, it may be settled before me at New Haven, Thursday, July 17, 1941, at 10:30 A.M.