BUSH et al.
v.
REMINGTON RAND, Inc.
BUSH
v.
REMINGTON RAND, Inc.
No. 155, Docket 22522.

United States Court of Appeals, Second Circuit.
Argued Jan. 5, 1954.
Decided May 25, 1954.

See also 15 F.R.D. 60.

Robert P. Butler, Arthur E. Howard, Jr., Valentine J. Sacco, Butler, Volpe, Garrity & Sacco, Hartford, Conn., for plaintiffs-appellees.

John W. Davis, New York City, Raymond E. Hackett, Stamford, Conn., William R. Meagher, Brooklyn, N. Y., William H. Timbers, Washington, D. C., Cummings & Lockwood, Stamford, Conn. (Francis J. McNamara, New York City, Edwin T. Bean, Buffalo, N. Y., Edward F. Snyder, Stamford, Conn., and James J. Higginson, New York City, on the brief), for defendant-appellant.

Before CHASE, Chief Judge, AUGUSTUS HAND, Circuit Judge, and GIBSON, District Judge.

GIBSON, District Judge.

There are two actions of contract brought (a) by two daughters, Isabel Dysart Bush and Dorothy Dysart Fellers, and one son, Samuel Clayton Dysart, of Birney Dysart, against Remington Rand, Incorporated; and (b) by one daughter—Isabel Dysart Bush, Administratrix d. b. n., c. t. a. of estate of Birney Dysart, against the same defendant. The gist of the action, in each case, is identical. Henceforth, except as to one alleged error, the term "plaintiff" will be used to denote all the plaintiffs in the combined actions.

The plaintiff's complaint contained two counts. It alleged, in its first count, the following: Birney Dysart, on or about December 25, 1919, invented an automatic credit balance device to be used in connection with, and as part of, adding, bookkeeping or other business machines.

Sometime between November, 1923, and May, 1924, Birney Dysart, the owner of this invention and the applicant for a patent thereon, agreed with the Dalton Adding Machine Co. of Norwood, Ohio, that the Dalton Co., pending the issuance of letters patent upon this invention, might use it, for a consideration to be agreed upon within a reasonable time after the issuance of letters patent, and the Dalton Co. further agreed, as part consideration for its use,

to pay all costs relative to the issuance of the patent.

On or about May 9, 1927, the defendant purchased all assets and assumed all liabilities, immediate or contingent, of the Dalton Co. The Dalton Co. paid charges and costs relative to the issuance of the patent until its purchase by defendant. The defendant has, since its purchase of Dalton Co., paid none of the charges or costs of obtaining the patent. Letters patent on the invention were issued on September 17, 1935.

Since September, 1924, the Dalton Co.—and the defendant—used this invention in the manufacture of, and as part of, a large number of adding, bookkeeping and other business machines. Yet since the issuance of the patent, the defendant has made no attempt to agree with Birney Dysart, his representative, or his heirs (the plaintiffs) concerning compensation for such use, for which compensation was asked in the first count.

The second count asked for an accounting and disclosure of the number of machines sold by the Dalton Co.—and defendant—which were equipped with this invention and manufactured and sold by the Dalton Co. and defendant, and asked for judgment for the amount found due on such accounting.

This complaint was dated November 8, 1937, and was entered in the Superior Court at Hartford, Connecticut. On motion of the defendant, the action on December 22, 1937, was removed to the Federal Court. After sundry motions —to expunge—to strike—the defendant filed, on November 1, 1938, its answer. This answer contained a general denial and twelve special defenses. After further motions and hearings thereon, on March 8, 1940, the special defenses were boiled down to those of shop right, license, legal or equitable title, fraud and estoppel.[1]

Both parties finally having agreed to trial by court, trial was had before Judge Clark commencing April 28, 1941. On July 11, 1941, Findings of Fact and a Memorandum of Law were filed in favor of the plaintiffs. Dysart v. Remington Rand, Inc., D.C., 40 F.Supp. 596. Liability to the plaintiff was predicated on an express promise on the part of the Dalton Co., assumed by the defendant when it merged with the Dalton Co., to pay the reasonable value for the use of the Dysart device. Accordingly, on July 18, 1941, an interlocutory judgment was entered. This interlocutory judgment ordered the defendant to account to the plaintiff for the reasonable value of the use of the patent made by it and the Dalton Co.—and referred the case to a Special Master to ascertain the extent of such use, the reasonable value thereof, and the amounts due each of the plaintiffs—and awarded costs to the plaintiff.

On October 2, 1941, Charles M. Lyman, Esquire, was appointed Master. Apparently it took the parties a great deal of time to gather together all the necessary factual data—because it was not until early in 1949 that hearings on the merits were held before the Master, and these continued until mid-June of that year. The Special Master's first report was dated December 17, 1949. All parties filed exceptions to the first report of the Master and, after a lengthy hearing, Judge Smith, on July 10, 1951, recommitted the matter to the Master to make additional findings and corrections in the report.

On December 3, 1951, the Supplementary Report of the Special Master was signed. Objections were filed and a Second Supplementary Report was signed by the Master on April 4, 1952. Objections to the reports filed in the District Court were overruled on June 26, 1952, and on July 21, 1952, judgment

[1]. Earlier phases of this action may be found at D.C., 25 F.Supp. 293; D.C., 31 F.Supp. 296; D.C., 32 F.Supp. 477; D.C., 40 F.Supp. 596.

was entered in favor of the plaintiff to the following effect:

Isabel D. Bush, as Administra-
trix d.b.n c.t.a. of the Estate
of Birney Dysart.......... $142,717.91
Isabel D. Bush .............. 359,094.56
Dorothy D. Fellers........... 359,094.56
Samuel C. Dysart............ 359,094.56
Costs were awarded the plaintiff.

It is from this judgment that defendant appeals. We have gone into the history of this case at some length— since more than sixteen years have elapsed since the commencement of this action. We have not attempted to enumerate the nearly countless motions that have been filed—and contested. Suffice it to say, the record indicates that this action has been staunchly contested every inch of its way. And it will be necessary, in discussing the defendant's exceptions, to consider in detail certain other historical aspects of this case.

The first error assigned by the appellant is that the plaintiffs are estopped from prevailing in this action because of Birney Dysart's alleged misrepresentations at the time of the merger of the Dalton Co. with the defendant, and his failure to disclose his agreement with the Dalton Co. and his then pending patent application.

In considering this claim of error, we are governed by two principles—first, we must sustain Judge Clark's finding that there was neither actual nor imputable fraud if there is any substantial evidence in support thereof. United States v. Aluminum Co. of America, 2 Cir., 148 F.2d 416, 433; Rule 52, Federal Rules of Civil Procedure, 28 U.S.C.A. Such inferences as the Trial Judge drew—in this matter— are not binding upon us, but they are entitled to substantial weight and, so far as reasonable, should be given effect here. United States v. Fotopulos, 9 Cir., 180 F.2d 631; Rule 52, Federal Rules of Civil Procedure.

In addition, the defense of estoppel by fraud is an affirmative defense.

The defendant had the burden of proving that Birney Dysart was guilty of all of the elements of fraud. Rule 8(c) of Federal Rules of Civil Procedure.

Guided by these principles, it is clear there was no error by the Trial Court in denying the defendant's contention as to estoppel by fraud.

Defendant's argument therein is twofold. It first charges that the report of the auditors stating that "No contingent liabilities were reported to nor disclosed by us during the course of our examination and a responsible official of the Company certified to us that none existed at December 31, 1926." was an affirmative misrepresentation on the part of Dysart, since he was the Treasurer and the one who signed the financial statements underlying this report.

The Trial Court found as follows:

"On February 21, 1927, as secretary of the Dalton Company, Dysart signed several certifications on forms presented to him by Ernst & Ernst, accountants engaged in making an audit report of the Dalton Company as of December 31, 1926. These certifications were as to the inventory, accounts receivable, liabilities, and purchase and sale commitments of the company; that one which dealt with liabilities stated that to the best of the certifier's knowledge and belief provision had been made on the books of account for all liabilities except certain invoices noted, and that the company was not liable as endorser or guarantor on any accommodation paper, contract, or agreement, had not pledged or assigned any of its assets, 'had no outstanding contracts of a speculative nature for material or other items; had no damage or losses on account of discounted notes, trade acceptances or other forms of obligation.' These certifications were not brought to the attention of defendant's officers, but Ernst & Ernst's audit report,

which came to their attention a few days after March 2, 1927, stated that no contingent liabilities were reported to or disclosed by them during their examination, 'and a responsible official of the Company certified to us that none existed at December 31, 1926.' At that time (about March 5, 1927) all arrangements for the sale had been completed, and in the announcement of February 14, 1927, no reference had been made to contingent liabilities in the pro forma balance sheet or elsewhere. In making the purchase of the Dalton assets, defendant was interested in Dalton's favorable income-showing and strong patent situation, and did not know of or rely on these certifications made by Dysart."[2]

Assuming—but not deciding—that the statements on the certifications described in Finding 10—which were signed by Dysart—amounted to a misrepresentation, it is still necessary—in order to have an estoppel by fraud, to find either an intent to defraud or to find that Dysart's act was so grossly negligent as to amount to fraud. Compare O'Connor v. Ludlam, 2 Cir., 92 F. 2d 50, 53, certiorari denied 302 U.S. 758, 58 S.Ct. 364, 82 L.Ed. 586. The Trial Judge found neither actual nor inferential fraud. Certainly the facts found by the trier are adequately supported by the evidence. The inferences drawn by the trier are to be given substantial weight.

 A fundamental essential to a valid defense of fraud is that the defendant must show that it relied on the alleged misrepresentation. General Finance Corp. v. Keystone Credit Corp., 4 Cir., 50 F.2d 872, 881. The burden was on the defendant to prove that element. Judge Clark found, in the last sentence of Finding 10, noted above, that defendant did not know of or rely on these certifications made by Dysart. Such a finding is warranted from the evidence.

Furthermore, it is far from clear that the statement to the auditors had been correctly interpreted by them to mean that there were no contingent liabilities. There was no certainty at the time of the merger early in 1927, that letters patent would ever issue on this invention. There is a difference between a contingent liability and a plain "contingency." "A contingent liability is one thing, a contingency, the happening of which may bring into existence a liability, is another, and a very different thing. In the former case there is a liability which will become absolute upon the happening of a certain event; in the latter there is none until the event happens. The difference is simply that which exists between a conditional debt or liability and none at all." Fernald v. Johnson, 71 Me. 437, 440. Certainly we cannot find that defendant sustained the burden of proving it relied on these statements in making the deal of merger. The burden being on the defendant on this question—we cannot find it has sustained it.

Nor do we find any substance to the defendant's contention that Dysart's silence constituted an estoppel by fraud. The situation in which Dysart acted is clear enough. Although he was Treasurer of the Dalton Co., he had no part in the negotiations with Rand. He was not consulted. He knew that Landsiedel, then President of the Dalton Co. and who alone carried on the negotiations for the Dalton Co. with Rand, knew about his contract with the Dalton Co.

 To be charged with estoppel by silence, Dysart must have been under a duty to speak—or to have known that the defendant was acting under a mistaken belief. Sinclair Prairie Oil Co. v. Campbell et ux., 5 Cir., 164 F.2d 907, 910.

 Since he was not a party to the negotiations, or in any way in a fiduciary relationship with Remington Rand, he had no duty to speak. He had every right to rely on Landsiedel's duty of dis-

2. Dysart v. Remington Rand, Inc., D.C., 40 F.Supp. 596, 598.

closure. Nor is there an iota of evidence either to indicate that Dysart knew the defendant was ignorant of Dysart's rights in his patent or that the defendant was acting under a mistaken belief. And the burden was on the defendant to show any such situation.

The second point urged by the defendant is that recovery is barred by the Connecticut three-year or six-year statutes of limitations governing oral contracts. This contention is easily disposed of, as Judge Clark found,[3] that the issuance of the patent was an absolute condition to liability under the contract. Thus the cause of action did not arise until that contingency was fulfilled and as such, any statute of limitations could not begin to run until such time. Since the patent did not issue until September 17, 1935—less than three years before the commencement of this action in November, 1937—the action is not barred by either the three- or six-year limitation.

The defendant's claim that the plaintiffs unequivocally accepted the claimed repudiation in 1934, when they granted a license to Underwood-Elliott-Fisher and thereby rendered themselves incapable of performing the Dysart-Dalton Co. agreement, is equally untenable.

The contract as found by Judge Clark in Finding 5[4] did not provide that Dysart should be in a position to assign complete rights in the patent to the Dalton Co. The Dalton Co. contracted to pay Dysart the fair value, to be agreed upon, for the use of the patent. There was no provision in the contract to assign the patent when issued. Intention is an inference of fact for the trier, and his conclusion is not reviewable unless it was one he could not reasonably make. U. S. v. Yellow Cab Co., 338 U.S. 338, 70 S.Ct. 177, 94 L.Ed. 150; McDermott v. McDermott, 97 Conn. 31, 34–35, 115 A. 638; Finley v. Swirsky, 98 Conn. 666, 671, 120 A. 561. Indeed the trial judge was fully justified in finding the contract as he did.

Defendant's next claim concerns Rule 25(a) of the Federal Rules of Civil Procedure which directs dismissal of an action as to a deceased party if proper substitution for the party is not made within two years. The rule is sought to be invoked against the interests represented by the wife of the inventor Birney Dysart, Mrs. Eva Perin Dysart, at the time she died on December 30, 1945. She was then a party to the proceedings in two capacities. As Executrix of the estate of Birney Dysart, who died on July 20, 1932, she was the sole plaintiff in the action to recover the reasonable value of the use up to August 8, 1933, the date when Dysart's estate was distributed. In the second action brought to recover the value of the use after August 8, 1933, she was party plaintiff to the extent of a one-quarter interest in the recovery. Although sole legatee of Dysart's estate, in 1935 she had transferred a three-quarter interest in equal parts to her three children, who were also plaintiffs in this second action.

Within the two-year period after Mrs. Dysart's death in 1945, no effort was made to substitute for her interests, and on March 27, 1947, her estate was fully settled and distributed to the three children, full state and federal tax liability having been paid. Over four years after her death, on January 11, 1949, hearings on the merits before the Special Master were commenced. Her death was suggested on the record on January 19, 1949, and the hearings terminated on June 17, 1949. Although defendant had knowledge of Mrs. Dysart's death as ear-

---

3. "* * * When the Dalton Company sought to make use of the invention in 1924, the president and general manager thereof, James L. Dalton, the dominant factor in the management of the company and with his family the chief stockholders, agreed with Dysart that the company should use the invention and that the company would compensate Dysart for the use when its value became ascertained after issuance of the patent for it. * * *" Dysart v. Remington Rand, Inc., D.C., 40 F.Supp. 596, 597.

4. See Footnote 3, supra.

**464**

ly as 1946, no attempt was made to raise the issue of no substitution until defendant filed its original brief before the Master on July 25, 1949, after the completion of the hearings. Not until January 31, 1950, was a motion made in the District Court under Rule 25(a) to dismiss the actions as to her, both as Executrix and individually. The Special Master found little merit in the defendant's arguments, and Judge Smith, in his memorandum on the Master's report filed July 10, 1951, denied the motion to dismiss. He found that failure to substitute in the second action was not fatal, since under the distribution of Mrs. Dysart's estate in April, 1947, full legal title to the claim against the defendant passed to the children, and the children were already parties to the action. However, as to the first cause of action in behalf of Birney Dysart in which Mrs. Dysart was the sole representative, he found that since inventories of his estate listed the claim as late as 1949, and taxes remained to be settled and paid, the claim still reposed in the estate. Thus legal title rested with the personal representative of the estate and only such a representative was the proper party to enforce the action. Butler v. Sisson, 49 Conn. 580; Lynch v. Skelly, 138 Conn. 376, 379, 85 A.2d 251. Since the personal representative had not been made a party, dismissal under Rule 25(a) would ordinarily follow, but he found that the defendant, by its long delay in raising the issue, had waived its right to object and was estopped from invoking the rule. Thus, pursuant to Federal Rule 21, which permits the District Court to add or drop parties at any stage of the proceeding on such terms as are just, he allowed the daughter Isabel D. Bush, Administratrix d.b.n.-c.t.a. of the estate of Birney Dysart under Probate Court decree of August 16, 1949, to be added as party plaintiff in the first action.

We can see no error in this decision. The defendant knew of Mrs. Dysart's death as early as 1946, and if objection had been made at least prior to the hearings in 1949, those proceedings would have been greatly simplified and much time and expense would have been saved. Having stood by while the plaintiffs expended money and effort in bringing the case to judgment, the defendant should no longer be allowed to object. The defendant, in disputing this decision, relies on Anderson v. Yungkau, 329 U.S. 482, 67 S.Ct. 428, 91 L.Ed. 436, where, in a suit to recover certain stock assessments, the Court ruled that dismissal under Rule 25(a) after two years was mandatory. Although the failure to substitute was due to no lack of diligence on the part of the plaintiff-receiver, the Court held that there was no power, under the excusable neglect provision of Rule 6(b), to extend the time within which the executors of some of the defendant stockholders who had died could be substituted. On the basis of this decision, the defendant argues that Rule 25(a) is jurisdictional; that the operation of the Rule cannot be waived by conduct of the parties.

However, we do not think the Yungkau case is controlling here where the issue is not discretion of the Trial Court but waiver by the parties. In ruling that dismissal was mandatory, the Court characterized Rule 25(a) as a type of statute of limitations. See 329 U.S. at page 485, 67 S.Ct. 428. Moreover, in that decision Rule 25(a) was used to protect the repose of the estate of the defendant, but here it is being used only to bar the plaintiff's immediate remedy. As such, it more clearly appears to take the form of a limitation statute. This characterization seems even more realistic, as neither the plaintiff's right nor remedy would be barred under Connecticut law if we dismissed, Conn.Gen.Stat., Sec. 8337, and plaintiff could institute a new suit within one year of our dismissal. Conn.Gen.Stat., Sec. 8332. A statute of limitations can be waived, Matheny v. Porter, 10 Cir., 158 F.2d 478, 479, and we think defendant clearly has done so here. A contrary result would not only prolong the liti-

gation but defeat the purpose of Rule 25(a), as the closing of the estate of Birney Dysart would be interminably delayed. We are of the opinion that neither Rule 25(a) nor the Yungkau case forces us to condone such a result.

The appellant's final claim of error is that the Special Master's computation of the "reasonable value" of the use of the invention was grossly excessive. The appellant first claims that the District Court and Special Master erred in refusing to consider and not give effect to proof that plaintiff, in 1934, granted a non-exclusive unrestricted license for the full life of the Dysart patent to Underwood-Elliott-Fisher for $100,000.

We want to note right here that the appellant originally claimed that this $100,000 figure paid by Underwood for a license was too high for use by the Special Master. On the contrary, its entire case—initially—was based on the claim that the "value of the use of the Dysart device" to it should be determined solely on defendant's showing of profits, or lack thereof.

It was only after the Special Master recommended an award well in excess of $100,000 that the defendant went into a tailspin—reversed itself—and petitioned to reopen the hearings to present evidence of other licenses granted by Mrs. Dysart.

The Special Master denied this motion on the ground that the $100,000 figure was a price fixed in settlement and was not a true mirror of worth. He also found that any other licenses granted could not represent dealings in the open market because of the cloud thrown on plaintiff's title by defendant's claim. These rulings were affirmed by Judge Smith, who also, on remand, directed the Master to take into consideration the effect competition resulting from these licenses might have on the value of the defendant's use.

In these rulings, there was no error. A contract made in settlement of litigation is inadmissible as evidence of value. Activated Sludge, Inc., v. Sanitary District of Chicago, D.C., 64 F. Supp. 25, 33, affirmed 7 Cir., 157 F.2d 517, certiorari denied 330 U.S. 834, 67 S.Ct. 970, 91 L.Ed. 1281.

On February 19, 1931, an interference suit against the then pending Dysart patent was filed by a Mr. Sundstrand. This action was sponsored by Underwood-Elliott-Fisher, owner of the Sundstrand interests. It was decided in plaintiff's favor in 1934, and the license agreement between plaintiff and Underwood-Elliott-Fisher was part of the settlement of that litigation.[5]

Furthermore, such licenses as were granted, were granted when this litigation was an element which had to be taken into account. It could not help but make prospective licensees so cautious that such license fees would not be apt to reflect fair value.

Appellant claims that the District Court and Special Master erred in awarding plaintiff a greater sum than the reasonable value of the non-exclusive use of the Dysart device. But it is true that determination of damages involving misuse of a patent is a question of fact for the trier. National Car-Brake Shoe Co. v. Terre Haute Car Co., C.C.Ind., 19 F. 514. Reynolds Spring Co. v. L. A. Young Industries, 6 Cir., 101 F.2d 257, 261. We cannot read the statement of the Special Master regarding royalty rates in the same manner as the defendant does in its brief. We are satisfied that the District Judge properly resubmitted the matter to the Special Master with instructions to reconsider his findings to determine the reasonable value on the basis of actual experience for the entire period from 1924 to the close of the hearings "to make plaintiffs whole for the damages suffered by them from the breach of contract implied in fact to start paying within a reasonable time after the issuance of the patent, and to continue to pay, thereafter, the reasonable value of the use."

5. Transcript of Record, Page 134.

Thereafter, plaintiff introduced four witnesses who testified as to a reasonable royalty rate. They supplied ample basis for the findings as made. It should also be remarked that the defendant produced no witnesses on this point.

The defendant also claims that the Special Master and District Court erred in including the value of the Dreher mechanism, which, it claims, is entirely distinct and different from the Dysart device, in the calculation of damages for the use of the Dysart device in tabulating machines.

■ This claim is easily disposed of. The Special Master found that the Dysart device represented the important part of the machine—that which made it sell and which gave the machine its enhanced value.[6] This finding was approved by the Court. Indeed, the evidence overwhelmingly supports this finding, and this Court cannot say—in any way—that this finding was clearly erroneous. Reynolds Spring Co. v. L. A. Young Industries, supra.

■ The last of the errors claimed by defendant is that allowance of interest from 1936 was erroneous. However, we believe the interest as allowed should be upheld. The defendant has made devious and strenuous efforts to avoid this claim. Judge Smith says that "it would be difficult to find a more adequate showing of exceptional circumstances justifying the award of interest than that for the unlawful detention of the amounts due to Dysart's successors." In this we fully concur, and such interest is allowable in such circumstances—under Connecticut law. Campbell v. Rockefeller, 134 Conn. 585, 591–592, 59 A.2d 524. We find no error as claimed by defendant.

In this case, the plaintiff filed a cross-appeal claiming the Court erred in denying, in part, plaintiff's motion for costs.

The plaintiff objects to the disallowance of costs for expert services and witness fees for one person and one corporation. However, Judge Smith did not find that defendant's conduct during the hearings was dilatory or fraudulent.

■ The allowance of costs to the prevailing party is not a matter of absolute right; the Trial Court has inherent power to disallow a part, or all, of the costs in a case. Prudence-Bonds Corp. v. Prudence Realization Corp., 2 Cir., 174 F.2d 288.

There is no merit to the cross-appeal, and we do not disturb the action of the court below.

6. Transcript of Record, Page 169.