J. Ralph SAYLOR, Plaintiff,

v.

Thayer LINDSLEY et al., Defendants.

No. 65 Civ. 516 (CHT).

United States District Court,
S. D. New York.

May 18, 1976.

Avrom S. Fischer, Brooklyn, N. Y., for plaintiff J. Ralph Saylor and Objectant Roseanne Horn.

Gerard J. O'Brien, New York City, for Objectant Michael J. McLaughlin.

Abraham I. Markowitz, New York City, on behalf of the Class.

Wickes, Riddell, Bloomer, Jacobi & McGuire, New York City, for defendants Falconbridge Nickel Mines Ltd., La Luz Mines Ltd., and Ventures Ltd.; Herbert J. Jacobi, James W. Harbison, Jr., Charles E. McTiernan, Jr., New York City, of counsel.

## MEMORANDUM

TENNEY, District Judge.

Defendants Falconbridge Nickel Mines Limited ("Falconbridge"), La Luz Mines Limited ("La Luz"), and Ventures Limited ("Ventures") seek an order of this Court dismissing the complaint in this action as to each of them. The motions are based upon: (1) Rules 4(a) and 41(b) of the Federal Rules of Civil Procedure for the plaintiffs' more than seven year delay in prosecuting the action against each of the moving defendants; and (2) Rule 12(b)(6) of the Federal Rules of Civil Procedure upon the ground that if a claim is stated in the complaint it is barred by the statute of limitations. In addition, defendant Falconbridge further moves for dismissal of the complaint based upon: (1) Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim as against Falconbridge upon the ground that Falconbridge is not alleged to have been a participant in the wrongdoings alleged in the complaint and was not merged with defendant Ventures as alleged in the complaint; and (2) Rule 12(b)(2) of

the Federal Rules of Civil Procedure upon the ground that Falconbridge's contacts with the United States are not sufficient to confer personal jurisdiction over it. For the reasons stated below, the motions of each of the defendants are granted dismissing the complaints as to each of them.

This is a stockholder's derivative action brought on behalf of The Tonopah Mining Company of Nevada ("Tonopah") alleging violations of the Securities Act of 1933, the Securities Exchange Act of 1934, and the Investment Company Act of 1940. The gravamen of the complaint is that, through the conspiratorial acts of several of the defendants, Tonopah sold a valuable mining property at a substantially diminished price to one of the defendants. The complaint was filed in February of 1965. The sale of the mining property took place in the early 1950s.

### Failure to Prosecute

The factual background against which the instant motion is interposed is as follows: In 1951, Tonopah sold 60% of its stock in its wholly-owned subsidiary, the Tonopah Nicaragua Company. The sole asset of this company was a mining property located in Central America. The sale was made to a company named Mines, Inc. Since Tonopah was registered as an investment company under the Investment Company Act of 1940, 15 U.S.C. §§ 80a–1 et seq., and since Mines, Inc. was an "affiliate" as defined in 15 U.S.C. § 80a–2(a)(3), the sale could not be effectuated without securing an exemption in advance from the Securities and Exchange Commission ("SEC"). This exemption was sought and duly obtained.

In 1953, Tonopah sold its remaining 40% interest in the Tonopah Nicaragua Company to Mines Inc. Again an exemption was required, and again an exemption was obtained.

In 1956, one Michael J. McLaughlin filed a 19 page report with the SEC charging that Thayer Lindsley, a defendant in the instant action, had conspired with two corporations controlled by him to cause the sale of the Central American mining property from the first corporation in which he held a lesser interest to the second corporation in which he held a greater interest. The transfer was alleged to have been made for a grossly inadequate consideration. It was further charged that the exemptions obtained from the SEC were obtained through a series of material misrepresentations and omissions. The SEC staff investigated and concluded that the answers of Tonopah sufficiently met the charges and that no further action was indicated. It is interesting to note that this report was apparently distributed, *inter alia,* to some 600 or 700 stockbrokers, the United States Attorney for the Southern District of New York, the District Attorney for New York County, the SEC office in New York, the five Commissioners of the SEC individually, and some 50 or 60 stockholders of Tonopah.

Later in 1956, McLaughlin distributed to the stockholders of Tonopah first a one-page report and then a two-page report calling for the recovery of the Central American mining property. And in early 1957, he distributed an edited version of the 19 page report to the 2,500 stockholders.

McLaughlin was apparently dissatisfied with the results of these efforts. Since he was not a stockholder of Tonopah at the time of the alleged violations, however, he sought out and enlisted the aid of a qualified stockholder, Mr. Ray Hawkins ("Hawkins"). In the name of Hawkins, they instituted litigation in the United States District Court for the Southern District of New York, the New York State Supreme Court, and the Delaware Chancery Court. These three suits, styled *Hawkins v. Lindsley, et al.,* each contained substantially the same allegations as were contained in the 1956 report of McLaughlin to the SEC. The two state court actions were dismissed for lack of prosecution in 1960 and 1962 respectively. The federal district court action was dismissed with prejudice in 1961 for failure to post a security bond required by an order of the Court.

McLaughlin again sought out a qualified stockholder and commenced the instant ac-

tion in February of 1965.[1] The allegations of the instant complaint are essentially the same as the allegations in each of the earlier suits. All three of the moving defendants herein were named in the original complaint, but none were served when the action was commenced.[2] Seven of the sixteen named defendants were served at the time that the action was instituted. Those defendants moved to dismiss the action in May of 1965. The motion was granted in June of 1967 on the basis of the prior dismissal with prejudice of the *Hawkins v. Lindsley* action. The United States Court of Appeals for the Second Circuit reversed, holding that the prior adjudication was not on the merits.

In April of 1969 a motion to dismiss based upon the statute of limitations was denied due to the presence of a question of adverse domination which could potentially toll the statute. At that time, the pendent state claims were dismissed. The Court also granted leave to amend with regard to the tolling doctrine of fraudulent concealment since it was not properly pleaded, but no application to amend was ever made. Nor was an appeal taken from the order.

The parties entered into a stipulation of settlement in September of 1970, and after a hearing, the settlement was approved by the Court over McLaughlin's objection in January of 1971. The Court of Appeals, however, reversed the approval of the settlement and remanded the action to the district court in March of 1972.

Following the remand of the approval of the settlement, plaintiff served defendants Falconbridge and La Luz on June 5, 1972. Plaintiff served defendant Ventures on June 28, 1973. Defendants Falconbridge and La Luz originally interposed the instant motions on July 24, 1972, and defendant Ventures brought its motion on August 23, 1973. The motions were adjourned initially

to permit a substitution of counsel by plaintiff. They were adjourned again to permit discovery by plaintiff on the issues raised by the motions. Finally, at the suggestion of the Court, all motion papers were withdrawn and the motions were resubmitted on new papers on March 31, 1975. This, then, is the posture in which the instant motions are received.

The motions to dismiss for lack of prosecution are premised on the seven and eight year delay in the service of the summons and complaint on these defendants. While the defendants contend that the delay is per se prejudicial, they have cited several instances of what, in their view, is substantial actual prejudice, for example, the substantial proceedings had prior to their entrance into the litigation in which they had no opportunity to participate, the fading of the memories of some potential witnesses and the death of others, and the prejudice to those persons who became shareholders in Falconbridge after the commencement of the litigation and prior to service of the summons and complaint on Falconbridge.

Rule 41(b) of the Federal Rules of Civil Procedure states in pertinent part:

"(b) Involuntary Dismissal: Effect Thereof. For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him. . . . Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision . . . operates as an adjudication upon the merits."

▆▆ A dismissal under Rule 41(b) is within the discretion of the district court. *Link v. Wabash Railroad Co.,* 370 U.S. 626, 633, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734, 739 (1962); *Joseph Muller Corporation Zurich v. Societe Anonyme de Gerance et D'Arme-*

---

1. It has been noted by Judge Cooper of this Court in a previous opinion in this case that

   "[t]he affidavit of Michael J. McLaughlin (sworn to July 6, 1965) clearly demonstrates that McLaughlin has been the motor force in both actions."

2. Plaintiff sought, and obtained, an order of this Court authorizing his designees, rather than the U. S. Marshal, to serve defendants.

*ment,* 508 F.2d 814, 815 (2d Cir. 1974); *Taub v. Hale,* 355 F.2d 201, 202 (2d Cir.), *cert. denied,* 384 U.S. 1007, 86 S.Ct. 1924, 16 L.Ed.2d 220 (1966). An unreasonable delay in service will support a motion under Rule 41(b) without the need to make a showing of actual prejudice. *Finley v. Parvin/Dohrmann Company, Inc.,* 520 F.2d 386, 391 (2d Cir. 1975); *Joseph Muller Corporation Zurich v. Societe Anonyme de Gerance et D'Armement, supra,* 508 F.2d at 815; *Messenger v. United States,* 231 F.2d 328, 331 (2d Cir. 1956). Thus, the Court of Appeals for the Second Circuit set forth the test to be employed by the Court when considering a Rule 41(b) motion:

> "Under Rule 41(b), a motion to dismiss may be granted for lack of reasonable diligence in prosecuting. *Hackner v. Guaranty Trust Co. of New York,* [117 F.2d 95] supra; *Salmon v. City of Stuart,* 5 Cir., 194 F.2d 1004; *Shotkin v. Westinghouse Electric & Mfg. Co.,* 10 Cir., 169 F.2d 825; *Partridge v. St. Louis Joint Stock Land Bank,* 8 Cir., 130 F.2d 281; *Hicks v. Bekins Moving & Storage Co.,* 9 Cir., 115 F.2d 406. The operative condition of the Rule is lack of due diligence on the part of the plaintiff—not a showing by the defendant that it will be prejudiced by denial of its motion. *Hicks v. Bekins Moving & Storage Co.,* supra. It may well be that the latter factor may be considered by the court, especially in cases of moderate or excusable neglect, in the formulation of its discretionary ruling." *Messenger v. United States, supra,* 231 F.2d at 331.

What, then, does plaintiff cite to excuse the seven and eight year delay in the service of process in this case? Was there due diligence?

The reasons given by plaintiff[3] in the several voluminous memoranda in opposition to the motion range from the merely insubstantial to the truly incredible. For example, plaintiff states that

"[s]ervice upon Ventures although named as a defendant was unnecessary because Ventures merged into Falconbridge and as surviving corporation service on Falconbridge would be sufficient." (Memo. on Behalf of the Class at 5).

Can such a statement be seriously offered in excuse of the long delay in service when Falconbridge was not itself served until June 5, 1972?

Plaintiff also contends that the failure of service can be excused by the pendency of motions for summary judgment interposed by those defendants who had been served "almost immediately after the commencement of this action". Plaintiff felt that during the pendency of the motion for summary judgment and the ensuing appeal from the grant of the motion no purpose would have been served by bringing other defendants into the action.

This allegation strains the imagination. These defendants had every right to participate in the significant proceedings had in this action prior to the date that service was made upon them. While counsel for those defendants who were served conducted the litigation most admirably, the non-served defendants were entitled to notice and the opportunity to participate. Also, there is no sound reason why these defendants should have had to rely on the competence of counsel for the served defendants to adequately represent their interests. Additionally, the Court notes that two months had elapsed after the commencement of the action and prior to the interposition of the motions for summary judgment and that apparently service was not attempted during this period. This lapse in time only serves to undercut the allegation made by plaintiff here.

In a startlingly similar situation, all of the arguments raised by plaintiff herein to excuse the delay in service were disposed of in *Papilsky v. Berndt,* 71 Civ. 2534 (S.D. N.Y., 1973). In that case, however, the delay in service was just short of two years.

---

**3.** The Court will refer to plaintiff in the singular for purposes of clarity. In reality, three sets of memoranda were submitted in opposition to the motions and all were considered by the Court.

There also, plaintiff sought to excuse the delay in service by noting that summary judgment motions had been interposed "almost immediately after commencement of the action". The Court noted the two and one-half months interval between commencement of the action and service of the first dismissal motion and concluded that plaintiff's concern with "proliferating" defendants was "curious" in light of this interval and the fact that the defendants in question had been named as parties from the beginning. *Id.* at 3–4. Here too, these defendants had been named as parties from the beginning. It was also noted in *Papilsky* that in the interim between commencement and service on the moving defendants, "a considerable amount of litigation ensued, with several rulings by this court and the Second Circuit which might be considered adverse to these parties' interests, even though they might not be technically bound thereby". *Id.* at 2.

Plaintiff claims that, in 1969, counsel for defendants requested that plaintiff's counsel (Mr. Markowitz) not serve the Canadian defendants. Thus, plaintiff would excuse the delay to defendants' request. Both counsel for defendants and Mr. Markowitz deny that any such request was ever made, and the Court can hardly credit this assertion made by McLaughlin which is pure hearsay, in the face of the statements cited above which are made on personal knowledge.

Plaintiff further cites the settlement negotiations, the stipulation of settlement, and the appeal therefrom as an excuse for delay. This is not a case, like *Foxboro Company v. Fischer & Porter Co.,* 29 F.R.D. 522 (E.D.Pa.1961), where the stagnation in the case was attributable to the moving party's assertions that opposing counsel's constant "manuevering" in the case would upset any possible settlement of the action. *Id.* at 523. These defendants did not contribute to the delay by stalling any settlement negotiations.

The Court could go on *ad infinitum* addressing the multitude of claims lodged by plaintiff in defense of the delay in service on these moving defendants. It will not do so as it considers plaintiff's various assertions to be frivolous. The Court has indulged plaintiff this far only because the Court is extremely sensitive to the harshness of a dismissal with prejudice. *Theilmann v. Rutland Hospital, Inc.,* 455 F.2d 853, 855 (2d Cir. 1972).

As the Court has stated, the rule in this Circuit is that lack of diligence and not prejudice to the movant is the test to be employed by the Court, with the consideration of prejudice being only a factor for the Court to consider. *Joseph Muller Corporation Zurich v. Societe Anonyme de Gerance et D'Armement, supra,* 508 F.2d 814; *Messenger v. United States, supra,* 231 F.2d 328. Several decisions have recognized that an assumption of prejudice in the case of long unexcused delays is warranted. *States Steamship Company v. Philippine Air Lines,* 426 F.2d 803 (9th Cir. 1970); *Pearson v. Dennison,* 353 F.2d 24 (9th Cir. 1965); *S & K Airport Drive-In, Inc. v. Paramount Film Dist. Corp.,* 58 F.R.D. 4 (E.D.Pa.), *aff'd,* 491 F.2d 751 (3d Cir. 1973).[4] This Court will therefore briefly examine the presence of prejudice to these defendants or the lack thereof.

It is the conclusion of this Court that the prejudice to these defendants was substantial. The case had been pending for seven years (eight in the case of Ventures) when service was effected on these defendants. Several rulings had been made by the district court and the court of appeals which might substantially affect the interest of these defendants as litigants in this action. Yet, these defendants were denied the opportunity to participate in these proceedings. Despite plaintiff's protestations

---

4. Indeed, it has been noted in this Circuit that "[a] defendant who has not been brought into court has no obligation to do anything and '[t]he probability of prejudice to defendants upon whom process is not served for a long time is particularly great.' *Pearson v. Dennison,* 353 F.2d 24, 28 (9 Cir. 1965) (Duniway, J.)." *Finley v. Parvin/Dohrmann Company, Inc., supra,* 520 F.2d at 391.

to the contrary, once service on these defendants was deemed to be desirable, it was accomplished without difficulty thereby resulting in the instant motions. These defendants were named in the action from the first, an indication to this Court that plaintiff fully intended to make them parties to the action. Based upon the delay of seven and eight years, defendants were fully justified in believing that plaintiff had decided to abandon any claims against them. Also, it is clear that knowledge of these claims runs back twenty years. Memories have faded and witnesses have died or become unavailable (defendant Thayer Lindsley is now 92 years old and bedridden). Finally, the many persons who purchased Falconbridge stock after the action was commenced, but prior to service on Falconbridge, have suffered by not being made aware of the potential contingent liability which they might bear, and this was a direct result of the lack of service. The Court concludes that the delay in service was without excuse and that these defendants were substantially prejudiced by the delay.

> "Somewhere along the line, the rights of the defendants to be free from costly and harassing litigation must be considered. So too must the time and energies of our courts and the rights of would-be litigants awaiting their turns to have other matters resolved. The exact point on that line is incapable of exact definition, but we are satisfied that the present case went beyond it." *Von Poppenheim v. Portland Boxing & Wrestling Comm'n*, 442 F.2d 1047, 1054 (9th Cir. 1971).

The instant case also falls wide of the line.

Accordingly, the motions of defendants Ventures, La Luz, and Falconbridge are granted dismissing the complaints in this action as to each of them with prejudice.[5]

So ordered.

5. The instant disposition makes it unnecessary for the Court to address the other grounds upon which the motions are premised. Nevertheless, the Court notes by way of dicta that the statute of limitations argument, which the Court has carefully examined, is substantial.

The issue of fraudulent concealment is now a dead letter in the case and the issue of adverse domination has never progressed beyond allegations which are largely unsupported and are vigorously controverted.