**J. Ralph SAYLOR, Plaintiff,**

v.

**Philip BASTEDO et al., Defendants,**

**Michael J. McLaughlin, Applicant for Intervention.**

**No. 65 Civ. 516 (CHT).**

United States District Court,
S. D. New York.

Feb. 23, 1978.

Gerard J. O'Brien, New York City, for applicant for intervention; Richard Steel, New York City, of counsel.

Wickes, Riddel, Bloomer, Jacobi & McGuire, New York City, for defendant; Herbert J. Jacobi, James W. Harbison, Jr., Thomas R. Stritter, New York City, of counsel.

## MEMORANDUM

TENNEY, District Judge.

Michael J. McLaughlin ("McLaughlin"), the self-acknowledged *provocateur* in this now-twenty-year-old litigation, has petitioned the Court for permission to intervene formally in the action, to file an amended and supplemental complaint therein, and to add a new defendant. The dispute has its origin in the sale of all interests in a Nicaraguan copper deposit known as the Rosita Mine by the Tonopah Mining Company of Nevada ("Tonopah"), allegedly for grossly unfair consideration and in fraud of the Tonopah shareholders, of which McLaughlin is one. For the reasons set out below the petition is denied in all respects.

Because the facts in the case are well detailed in *Saylor v. Lindsley*, 456 F.2d 896 (2d Cir. 1972), the decision which remanded the action to this Court in its present posture, only a brief synopsis need be given here. McLaughlin acquired his stock interest in Tonopah in 1956, a short while after that entity, a registered investment company under the Investment Company Act of 1940, 15 U.S.C. §§ 80a–1 *et seq.*, sold the Tonopah Nicaragua Company, its wholly-owned subsidiary and owner of the Rosita Mine, to a company called Mines Inc. Ownership of the Rosita Mine has since changed a number of times.

Mines Inc. was an "affiliate" of the parent Tonopah, as that term is defined in 15 U.S.C. § 80a–2(a)(3), and because of that relationship the transfer of ownership between the entities, which was consummated in 1955, required—and was given—the sanction of the SEC. In 1956 McLaughlin complained via an extensive report to the SEC that various parties, some of whom remain as defendants in this action, had conspired to deprive Tonopah shareholders of the allegedly fabulously valuable Rosita property through undervaluation of the mine potential, material misstatements made in acquisition of SEC approval for the sale, and violation of other federal securities and state fiduciary laws. The SEC investigated and concluded otherwise, and McLaughlin turned to the courts.

Because he could not meet the contemporaneous ownership requirement for a shareholder's derivative suit currently codified in Rule 23.1 of the Federal Rules of Civil Procedure ("Rules"), McLaughlin sought out a qualified Tonopah shareholder to bring the action. That case was brought in 1957, was styled *Hawkins v. Lindsley* and was finally dismissed in 1963 for want of diligence in prosecution. *Hawkins v. Lindsley*, 327 F.2d 356 (2d Cir. 1964). Suit was recommenced in the name of yet another qualified shareholder, the current plaintiff Saylor, from whom McLaughlin holds a power of attorney. McLaughlin was responsible for initiating this litigation and retaining counsel. Affidavit of Gerard J. O'Brien, sworn to July 11, 1977, ¶ 15.

Thereafter, a motion for summary judgment as to certain defendants was granted, reversed, and remanded. *Saylor v. Lindsley*, 274 F.Supp. 253 (S.D.N.Y.1967), *rev'd*, 391 F.2d 965 (2d Cir. 1968). On remand, the district court gave the plaintiff leave, *inter alia*, to amend his pleadings to more fully expound the merits of his case in the face of serious questions of time-bar. 302 F.Supp. at 1184. This suggestion was never complied with, nor was the case prosecuted further. However, in the ensuing period the attorney for the shareholder class represented by Saylor entered into a stipulation of settlement with the defendants then re-

maining in the case. The settlement was approved by the court then supervising the proceedings, notwithstanding the objections of McLaughlin and two others, one of them the plaintiff himself. The objectors appealed. The court of appeals reversed and remanded the settlement for further inquiry, stating that

> the plaintiff, through his new counsel, and the other objectors [including McLaughlin,] should be allowed to delve somewhat more deeply into the merits of this action; whether this should be done by further discovery, or by taking evidence in open court, or by both, is for the district court to determine in the exercise of sound discretion.

*Saylor v. Lindsley*, 456 F.2d 896, 904 (2d Cir. 1972). The court continued:

> While a remand may well result in renewed approval of the settlement, this should come only after a thorough consideration of what the parties will present although "less than a trial."

*Id.* at 904–05 (footnote omitted).

Plaintiff Saylor (or perhaps the petitioner McLaughlin), apparently construed the direction to "delve more deeply" into the merits as an invitation to expand the already hoary action, and therefore caused service to be made on three defendants who had been named in the original action but who had never received process. Adverting to the lack of diligence which has characterized both this action and its predecessor, this Court granted motions by the newly served defendants for dismissal based on lack of prosecution. *Saylor v. Lindsley*, 71 F.R.D. 380 (S.D.N.Y.1976).

With this attempt to further complicate the action avoided, the next efforts of the participants appeared to better comport with the theory of the remand, *i. e.*, that party and nonparty objectors have the opportunity to expand their evidentiary base for reasoned quarrel with the terms of the proposed settlement in order that this Court may prudently assess its fairness and propriety. Interrogatories were served by plaintiff and responded to by certain defendants on April 5, 1977; the responses and copies of all correspondence relating to pending depositions were sent to counsel for McLaughlin. Affidavit of James W. Harbison, Jr., sworn to August 22, 1977, ¶ 11. Before such depositions could be taken, however, McLaughlin filed the instant petition to intervene.

### Discussion

McLaughlin has petitioned the Court for intervention under the terms of Rule 24(a)(2), which provides for intervention as of right

> when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Before McLaughlin's Rule 24 arguments can be addressed the Court must consider whether his status as a noncontemporaneous shareholder bars him from intervening. Under ordinary circumstances contemporaneous ownership is as much a condition precedent for intervention as it is for bringing the action. *Winkelman v. General Motors Corp.*, 44 F.Supp. 960 (S.D.N.Y.1942); *Piccard v. Speery Corp.*, 36 F.Supp. 1006 (S.D.N.Y.), *aff'd*, 120 F.2d 328 (2d Cir. 1941); 3B *Moore's Federal Practice* ¶ 23.1.-18, at 74–75 (2d ed. 1977). There is, however, a judicially-created exception to this rule which affords standing to an after-acquiring shareholder where there is a "continuing wrong" to a corporation. McLaughlin argues for invocation of that exception, asserting that after he acquired his Tonopah shares the defendants continued their "conspiracy" by various subsequent transfers of ownership of the Rosita Mine and that these later machinations were part and parcel of the wrong to Tonopah.

McLaughlin has misconceived the relevance of the "continuing wrong" exception to the facts of this case. The exception applies to a shareholder acquiring an interest in a corporation injured by a plan com-

menced before the date of share acquisition but not fully executed until afterward. *In re Penn Central Transportation Co.*, 341 F.Supp. 843, 844 (E.D.Pa.1972) (allegedly unconscionable lease would be a continuing burden on corporation); *Hoff v. Sprayregan*, 52 F.R.D. 243, 247–48 (S.D.N.Y.1971) (payments and issuance of warrants in consummation of alleged breach of fiduciary duty completed after shareholder status achieved); *Lissauer v. Bertles*, 37 F.Supp. 881, 884 (S.D.N.Y.1940) (future loans by corporation contemplated in fulfillment of allegedly illegal agreement); 3B *Moore's Federal Practice* ¶ 23.1.18, at 75–76. The grant of standing under these circumstances presupposes that the wrongful activity begun prior to share acquisition *continues* to place in jeopardy of loss the corporation on behalf of which the would-be plaintiff seeks redress. In this case, by contrast, the injury to Tonopah—if there was one—was complete and final on the day that entity was divested of all interest in the Rosita Mine. Neither McLaughlin nor any other shareholder has ever alleged that Tonopah thereafter endured further injury beyond the loss of the mine, or proximately and foreseeably caused by—but apart from—the loss of the mine. McLaughlin's allegations of further efforts by the defendants to manipulate control of the mine for their benefit have value, if proven, only as circumstantial evidence that Tonopah was wronged on the day it lost the property. The later activities of the defendants cannot be viewed as further wrongs to Tonopah and consequently could not be independent grounds for suit by Tonopah shareholders. Therefore, McLaughlin has no standing to sue under Rule 23.1 and is in no better position as an intervenor under Rule 24.

▬ The denial of standing is, in addition, dispositive of McLaughlin's other motions, *i. e.*, to file an amended and supplemental complaint and to add a new defendant, which are nullities in view of the fact that McLaughlin is not a party to this action. His status is that of an objector to a settlement. As such he had the right to appeal from approval of the settlement, as he did, and now he must be "afforded an adequate opportunity to test by discovery the strengths and weaknesses of the proposed settlement." *Girsh v. Jepson*, 521 F.2d 153, 157 (2d Cir. 1975). The Court must emphasize, however, that the tortured history of this litigation and of McLaughlin's role in it require a warning that McLaughlin has not hereby been given a license to prosecute the action between the parties, nor to move this Court on any matters save those pertaining to discovery of " 'facts going to the propriety of the settlement.' " *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974). McLaughlin has been in control of this litigation since its inception, and there has been no genuine progress toward resolution on the merits. It was he who retained the very attorney whose lack of diligence weighed so heavily in the reversal of the settlement agreement. He now tells the Court that he and present counsel for the plaintiff are at odds over the conduct of the case. O'Brien Affidavit ¶ 18. This may be so, but it does not become this petitioner to complain to the Court that after twenty years under his direction the litigation is not progressing satisfactorily to him. The patience of the courts is enduring but not infinite.

Only one matter now concerns this Court, and on that matter only may McLaughlin address this Court. There is the possibility that a just settlement can bring the dilatory progress of this action to an expeditious close. To that end, it is ordered that discovery pertaining to the equity of the proposed settlement be completed within six months of the entry of this order. The matter is referred to United States Magistrate Martin D. Jacobs to establish and supervise the schedule for such discovery, and the proceedings are to be closed at the end of the six-month period. All persons with standing to support or object to the settlement may participate in this discovery. At the end of the designated period this Court will schedule a settlement hearing to consider the evidence that has been developed.

So ordered.