**J. Ralph SAYLOR, Plaintiff,**

v.

**Philip BASTEDO et al., Defendants.**

**No. 65 Civ. 516 (CHT).**

United States District Court,
S. D. New York.

May 15, 1979.

Avrom S. Fischer, Brooklyn, N. Y., for plaintiff.

Morgan, Lewis & Bockius, New York City, for defendants; James W. Harbison, Jr., Thomas R. Stritter, New York City, of counsel.

## OPINION

TENNEY, District Judge.

This action, more an institution than a lawsuit, has finally suffered a mortal blow fourteen years after its initiation. The Court has received from the defendants a Suggestion of Death Upon the Record reporting that the named plaintiff, J. Ralph Saylor, died about three years ago. Responding to the notice of death, the executors of his estate, Robert Saylor, Clyde Saylor and Robert Barr (hereinafter "petitioners") seek substitution as nominal plaintiffs in this shareholders' derivative action. *See* Rule 25(a) of the Federal Rules of Civil Procedure ("Rules"). Because the Court has determined that this action simply cannot proceed 26 years after the events which are its genesis, the motion to substitute will be denied and the suit dismissed on the alternate discretionary bases found in Rule 25(a)(1) and in Rule 41(b).

The facts in this case need no detailed review because they are completely set out in *Saylor v. Lindsley,* 456 F.2d 896 (2d Cir. 1972), *rev'g* [1970–71 Transfer Binder] Fed. Sec.L.Rep. (CCH) ¶ 92,222, at 90,410 (S.D.N.Y.1971) (class action settlement disapproved and remanded to district court to permit objectors, including J. Ralph Saylor, to "delve somewhat more deeply into the merits of this action  . . ."); *Saylor v. Lindsley,* 71 F.R.D. 380 (S.D.N.Y.1976) (dismissal for want of prosecution as to newly served defendants); and *Saylor v. Bastedo,* 78 F.R.D. 150, 151 (S.D.N.Y.1978) (denial of petition to intervene filed by settlement objector Michael J. McLaughlin, the "self-acknowledged provacateur" in the litigation).[1]

Briefly, this is a suit by shareholders brought to redress an allegedly illegal sale by the Tonopah Mining Company of Nevada of its property, the Rosita copper mine. The two-step sale occurred in 1951 and 1953, and the initial attack on the transaction was brought in 1957. In 1965, a year after the first action was dismissed for want of prosecution, the current named plaintiff, J. Ralph Saylor, commenced this action. The key defendant, Thayer Lindsley, died, and his executors were substituted in March 1977. The current defendants have now asserted without dispute that J. Ralph Saylor died on or about September 24, 1975, nearly three years before the death was recorded on the Court's docket. It thus appears that this Court's 1976 and 1978 opinions post-dated the plaintiff's death, and McLaughlin, the "motor force" in the action, *see Saylor v. Lindsley, supra,* 274 F.Supp. at 256, either did not know of—or did not care to inform the Court of—Saylor's death. For their part, the petitioners admit that they knew nothing of the litigation before they applied for substitution. *See* Affidavits of Robert Saylor, Clyde Saylor and Robert Barr, sworn to October 20, 1978.

In its present posture the case is still on remand from the United States Court of Appeals for the Second Circuit. *See Saylor v. Lindsley, supra,* 456 F.2d 896 *passim.* Fully seven years have gone by since that panel withheld approval of a proposed settlement endorsed by the trial court. In its opinion the court of appeals instructed the objectors to "delve" into the merits of the settlement, but recognized that the renewed activity "[might] result in renewed approval of the settlement." *Id.* at 904. Since then the major activity in this case has consisted of the abortive attempts to serve new defendants and to obtain intervenor status for McLaughlin. Dismissing the latter petition this Court admonished all the objectors, including McLaughlin and the by-then-deceased Saylor, to confer with United

---

1. *See also Saylor v. Lindsley,* 274 F.Supp. 253 (S.D.N.Y.1967), *rev'd,* 391 F.2d 965 (2d Cir. 1968), *on remand,* 302 F.Supp. 1174 (S.D.N.Y. 1969); *Hawkins v. Lindsley,* 327 F.2d 356 (2d Cir. 1964) (affirming dismissal for want of prosecution in prior, identical action).

States Magistrate Martin D. Jacobs in order to complete within six months of the entry of the Court's Order all discovery pertaining to the equity of the proposed settlement. *Saylor v. Bastedo, supra,* 78 F.R.D. at 153. Five months later Saylor's death was revealed by the defendants and, as per custom and habit, the plaintiff's side waited to move for substitution until the penultimate moment prescribed by Rule 25(a). Although the motion to substitute was timely, if barely so, it was filed fully two months after the Court had ordered discovery to terminate.

■ The defendants have moved to block the substitution of plaintiff by an appeal to this Court's discretion under Rule 25(a)(1),[2] which provides that "[i]f a party dies and the claim is not thereby extinguished, the court *may* order substitution of the proper parties." (Emphasis supplied).

A motion to substitute made within the prescribed time will ordinarily be granted, but under the permissive language of the first sentence of the amended rule ("the court may order") it may be denied by the court in the exercise of a sound discretion if made long after the death . . . and circumstances have arisen rendering it unfair to allow substitution. . . . [A] party interested in securing substitution under the amended rule should not assume that he can rest indefinitely awaiting the suggestion of death before he makes his motion to substitute.

1963 Advisory Committee Notes to Rule 25(a)(1), 28 U.S.C.A. 119, 121 (1972). While there is no superabundance of precedent neatly delimiting the time beyond which substitution of an executor ought not to be allowed,[3] it is apparent from the history of this case that, wherever that boundary exists, the plaintiff's side has overstepped it. The precedents dealing with Rule 25(a)(1) clearly recognize that delayed substitution implicates limitations problems to which equitable principles apply in the attempt to "promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." *American Pipe & Construction Co. v. Utah,* 414 U.S. 538, 554, 94 S.Ct. 756, 766, 38 L.Ed.2d 713 (1974).

In *Anderson v. Yungkau,* 329 U.S. 482, 67 S.Ct. 428, 91 L.Ed. 436 (1947), the Supreme Court discussed the interplay between the predecessor of current Rule 25(a)(1) and Rule 6(b). The former provided that " '[i]f a party dies and the claim is not thereby extinguished, the court within 2 years after the death may order substitution of the proper parties. If substitution is not so made, the action shall be dismissed as to the deceased party.' " *Id.* at 484, 67 S.Ct. at 429. Rule 6(b), then as now, provided that there is discretionary power in the court to expand the time to do any act required or allowed by the Rules, except the time for taking an appeal and the time for amending a judgment or seeking a new trial pursuant to Rule 59. The *Anderson* Court held that the specific two-year limit in then-Rule 25(a) could not be superseded by Rule 6(b), tracing Rule 25(a) to its predecessor, which, like other statutes of limitations, was a statute of repose. It was designed to

---

**2.** The parties have also argued the propriety of permitting the substitution in view of the question raised as to the whereabouts and possession of the Tonopah stock held at one time by the elder Saylor. It appears that the petitioners never had the certificates and indeed did not know of J. Ralph Saylor's ownership of the stock until after the initial filing of letters testamentary when attorneys for the plaintiff so informed them. In its discretion to dismiss this case the Court need not address the arguments concerning the burden of proof where the ownership, vel non, of corporate stock is at issue. Suffice it to say that because Tonopah was incorporated in Delaware, that state's law would govern on the issue of proof of ownership.

**3.** In *Vandervelde v. Put and Call Brokers and Dealers Ass'n, Inc.,* 43 F.R.D. 14 (S.D.N.Y. 1967), substitution was permitted naming defendant's executor in an antitrust action. The executor complained that the administration and closing of the decedent's estate would be unduly prolonged by the substitution, but the court was unpersuaded, deeming it of crucial importance that there was no allegation that distribution had been made or was imminent. In this case the plaintiff Saylor's estate has long been settled.

keep short the time within which actions might be revived so that the closing and distribution of estates might not be interminably delayed. That policy is reflected in Rule 25(a). Even within the two-year period substitution is not a matter of right; the court "may" order substitution but it is under no duty to do so. Under the Rule, as under the statute, the settlement and distribution of the estate might be so far advanced as to warrant a denial of the motion for substitution within the two-year period.

*Id.* at 485, 67 S.Ct. at 430. The petitioners argue that *Anderson* is distinguishable because it involved the application of the two-year rule to protect the estate of a defendant, the party who is always favored by a statute of limitations.[4] This Court is referred to *Bush v. Remington Rand, Inc.,* 213 F.2d 456 (2d Cir. 1954), for a different result under then-Rule 25(a). Unfortunately for the petitioners, *Bush* in no way supports substitution in the circumstances at bar. In *Bush* the court cited *Anderson* to acknowledge that Rule 25(a) was a limitation statute and held that conclusion even more plain where, as in *Bush,* the Rule was being used to cut off a plaintiff's right to bring an action. Accordingly, the court was able to sidestep *Anderson* by finding waiver and estoppel, principles commonly invoked to prevent a defendant from hiding behind a limitation statute where equity demands that the plaintiff be heard. In *Bush* the defendants had known of the plaintiff's death nearly four years before they exposed it to the court, and their dilatory tactic was punished.

▮ No such facts are operative here. This husk of a case has been sapped of its vitality by a total of 23 years of procedural wrangling, most of it attributable to the plaintiff's side. Surely if the formal standards of equity were to govern the Court's

discretion under Rule 25(a)(1), the operative principle here would be laches, not waiver and estoppel.

The Court need not, however, search the record for classical indices of laches. Nor is it required to invite litigation by refusing to substitute and leaving the matter in procedural limbo. By analogy to the principles operating in Rule 41(b), which provides for involuntary dismissal, *inter alia,* "[f]or failure to prosecute," this Court will, rather than dismiss the case, reaffirm the 1970 settlement in disposition of the action. This is done only out of a sensitivity to the fact that outright dismissal would work a forfeiture of whatever recovery the Tonopah shareholders were able to achieve. That, in the Court's opinion, would be as much an injustice as permitting this interminable case to continue.

Sua sponte dismissal under Rule 41(b) derives from the inherent power in the court to "manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R. R. Co.,* 370 U.S. 626, 630–31, 82 S.Ct. 1386, 1389, 8 L.Ed.2d 734 (1962). Of course it borders on the farcical to speak of "expedition" in this case; however, it is hardly an argument against this Court's intention to terminate the action that the case has already dragged on too long. In the Court's opinion the facts here unquestionably support dismissal and, *a fortiori,* the relief short of dismissal that the Court intends to grant. In the period since the remand the plaintiffs have shown no conformity to the appellate mandate. Instead of seeking discovery and presenting relevant evidence on the merits of the settlement as the appellate court directed, *see Saylor v. Lindsley, supra,* 456 F.2d at 904, the plaintiff decided to serve new defendants. Bickering over the propriety of that procedural maneuver occupied four years, including, *inter alia,*

4. The petitioners do not argue that *Anderson* is inapplicable now that Rule 25(a)(1) no longer contains a rigid two-year cutoff for substitution. Professor Moore holds that *Anderson* is still applicable in view of language that suggested that the trial court could, where justice demanded, refuse substitution even within the

two years formerly permitted by Rule 25(a)(1). *See* 3B Moore's *Federal Practice* ¶ 25.06[3], at 25–277 n. 26 (2d ed. 1978). This Court agrees that there is nothing in amended Rule 25(a)(1) to justify a departure from the equitable theories endorsed in *Anderson.*

adjournments to permit the plaintiff to take discovery on his own motion. *See Saylor v. Lindsley, supra,* 71 F.R.D. at 382. Next, the defendants were substituted for the deceased Lindsley in 1977; in 1978 McLaughlin tried to intervene, and last year the defendants discovered the death of the elder Saylor. We are at the end of seven years and ten pages of docket entries with the case not one inch closer to resolution.

It is said by our court of appeals that the operative condition of Rule 41(b) dismissal is lack of due diligence on the part of the plaintiff—not a showing of prejudice to the defendant. *Messenger v. United States,* 231 F.2d 328, 331 (2d Cir. 1956) (citations omitted). Prejudice to the defendant *may* enter into the calculus, "especially in cases of moderate or excusable neglect." *Id.* This case has neither moderate nor excusable delay, and the prejudice to the defendants need not be explored except to observe that beyond a certain number of years prejudice might be assumed. *States Steamship Co. v. Philippine Air Lines,* 426 F.2d 803 (9th Cir. 1970). Moreover, if this Court shirked its duty to bring matters to an end after all this time, such action could constitute a clear abuse of discretion. For example, in *Tradeways Inc. v. Chrysler Corp.,* 342 F.2d 350 (2d Cir.), *cert. denied,* 382 U.S. 832, 86 S.Ct. 71, 15 L.Ed.2d 75 (1965), the defendant moved to dismiss a suit brought in 1958. The complaint had twice been amended, once in 1959 and once in 1960, and the suit had been dismissed twice before for lack of prosecution, once in 1960 and once in 1961. It was restored to the calendar each time by defendant's consent. On the eve of trial plaintiff moved for a stay to depose a witness not listed on the pretrial order although known to the plaintiff. That continuance was granted, but when the plaintiff moved five months later to expand the time in which to complete the deposition, the defendant renewed its motion to dismiss for lack of prosecution and the court of appeals found that the trial court's refusal to dismiss was an abuse of discretion.[5] If it was abuse not to dismiss after five years of dilly-dallying, what is it to permit the continued maintenance of this 23-year-old case which has already seen the dismissal of an identical action for a nine-year failure to prosecute, and which has suffered the death of the new plaintiff, of the original defendant, and of untold witnesses? At this point any trial would have to be conducted by a medium, not a judge.

This litigation must at some point come to an end. The Court must also consider "the rights of the defendants to be free from costly and harassing litigation . . . [and] the rights of would-be litigants awaiting their turns to have other matters resolved." *Von Poppenheim v. Portland Boxing & Wrestling Comm'n,* 442 F.2d 1047, 1054 (9th Cir. 1971), *quoted in Saylor v. Bastedo, supra,* 71 F.R.D. at 385. Those rights now prevail.

Therefore, in the absence of any evidence on which the Court could modify or otherwise alter the terms of the settlement as set forth in *Saylor v. Lindsley, supra,* 456 F.2d at 898, and for the equitable and other reasons hereinbefore set forth, the settlement is ratified and approved, and the motion to substitute pursuant to Rule 25(a)(1) is denied.

---

5. This court of appeals recently quoted with approval the following analysis of "abuse of discretion."

   "Abuse of discretion" is a phrase which sounds worse than it really is. All it need mean is that, when judicial action is taken in a discretionary matter, such action cannot be set aside by a reviewing court unless it has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.

*Finley v. Parvin/Dohrman Co., Inc.,* 520 F.2d 386, 390 (2d Cir. 1975), *quoting In re Josephson,* 218 F.2d 174, 182 (1st Cir. 1954).