**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 25, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ALFRED PECHA, by and through
Patty Pecha-Weber, Next Friend and
attorney-in-fact,

      Plaintiff - Appellant,

v.

ED LAKE, Director of Oklahoma
Department of Human Services; JOEL
NICO GOMEZ, Director of Oklahoma
Health Care Authority,

      Defendants - Appellees.

No. 16-6143
(D.C. No. 5:14-CV-01356-R)
(W.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE**, **HARTZ**, and **HOLMES**, Circuit Judges.

---

This case presents the question of whether a plaintiff's death moots his

request for an injunction ordering certain officials of the State of Oklahoma to

determine him eligible for Medicaid benefits. We answer yes. The claim for

injunctive—that is, prospective—relief is moot because there is no concrete threat

of a continuing or repeated injury to the plaintiff-appellant, Alfred Pecha, because

---

    [*]    This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Federal Rule of Appellate
Procedure 32.1 and Tenth Circuit Rule 32.1.

he is dead.  Any harm to Mr. Pecha lies squarely in the past.

Mr. Pecha's attorney-in-fact, his niece, Patty Pecha-Weber, argues on appeal that Mr. Pecha's death does not moot his claim for injunctive relief.  She further argues for an order for an award of retrospective Medicaid benefits under 42 U.S.C. § 1396a(a)(34).  However, because we determine that Mr. Pecha's claim for prospective injunctive relief is moot and Ms. Pecha-Weber concedes that any order of retrospective benefits must be ancillary to such prospective relief, we can find no error in the district court's dismissal of the case.  Accordingly, we **affirm** the district court's judgment.

**I**

Mr. Pecha initially applied for Medicaid benefits in early July 2014.  Acting on Mr. Pecha's behalf in that administrative matter—and throughout his subsequent judicial quest for Medicaid benefits—has been Patty Pecha-Weber, Mr. Pecha's niece, whom Mr. Pecha appointed his attorney-in-fact in February 2011.  After Mr. Pecha failed to obtain a determination of his eligibility for benefits, he brought suit in the United States District Court for the Western District of Oklahoma alleging a failure to timely provide such a determination.  Specifically, invoking 42 U.S.C. § 1983, Mr. Pecha sued Ed Lake, the Director of the Oklahoma Department of Human Services (OKDHS), and Joel Nico Gomez, Director of the Oklahoma Health Care Authority (OHCA) (collectively "Defendants-Appellees").  As reflected in his amended complaint, he requested

2

both injunctive and related declaratory relief. The requested injunction would have required both that Defendants-Appellees certify Mr. Pecha as eligible for Medicaid benefits and that the State pay three months' retrospective Medicaid benefits.[1]

On July 21, 2015, the district court granted in part and denied in part the Defendants-Appellees' initial motions to dismiss. The court dismissed Mr. Pecha's claim for a declaratory judgment on the basis of Eleventh Amendment immunity. However, the court ruled that the payment of three months' retrospective benefits could be ordered and "would not run afoul of the Eleventh Amendment in light of 42 U.S.C. § 1396a(a)(34)."[2] Aplees.' Supp. App. at 6

---

[1] While Mr. Pecha's suit was pending, on January 9, 2015, OKDHS denied his application, determining that he was ineligible for Medicaid benefits. The basis for the denial was that Mr. Pecha had disposed of various parcels of real estate to fund a trust and was unable to actively participate in farming on his remaining property; consequently, he allegedly could not claim an exemption as to that property.

[2] The relevant paragraph of this statute requires state Medicaid plans to

> provide that in the case of any individual who has been determined to be eligible for medical assistance under the plan, such assistance will be made available to him for care and services included under the plan and furnished in or after the third month before the month in which he made application (or application was made on his behalf in the case of a deceased individual) for such assistance if such individual was (or upon application would have been) eligible for such assistance at the time such care and services were furnished . . . .

42 U.S.C. § 1396a(a)(34).

3

(Order, filed July 21, 2015). The court permitted Mr. Pecha's claim for injunctive relief to go forward.

Mr. Pecha died on March 6, 2016. The Defendants-Appellees subsequently filed a suggestion of mootness and a motion to dismiss. In her response brief, in addition to arguing that the case was not moot, Ms. Pecha-Weber—whom a state court in April 2016 had appointed the personal representative of Mr. Pecha's estate—sought to substitute herself and Mr. Pecha's estate as the plaintiff. The district court, however, dismissed the action concluding that "the death of Mr. Pecha renders prospective injunctive relief impossible and therefore, the incidental back benefits sought cannot be tied to any prospective injunctive relief." Aplt.'s App. at 469 (Order, filed May 18, 2016). Though it did not explicitly address the matter, the court's dismissal of the action effectively denied Ms. Pecha-Weber's motion to substitute parties.

Ms. Pecha-Weber—in her role as attorney-in-fact—now appeals, arguing that prospective relief is still possible in the form of an injunction requiring the Defendants-Appellees to determine posthumously that Mr. Pecha was eligible for Medicaid benefits. Such prospective relief would in turn permit the district court to enter an order for the payment of retrospective Medicaid benefits under 42 U.S.C. § 1396a(a)(34).

Notably, Ms. Pecha-Weber does not argue on appeal that the district court

4

erred by failing to grant her motion to substitute. Nor has she sought to substitute herself on appeal as plaintiff-appellant, in her role as personal representative of Mr. Pecha's estate, by filing a motion under Fed. R. App. P. 43(a). Thus we conduct our analysis as though Mr. Pecha were the sole plaintiff before us; any contrary argument that Ms. Pecha-Weber could have (but has not) raised is waived. *See, e.g.*, *Kannady v. City of Kiowa*, 590 F.3d 1161, 1175 (10th Cir. 2010); *United States v. Abdenbi*, 361 F.3d 1282, 1289 (10th Cir. 2004). Consequently, as she did before the district court, Ms. Pecha-Weber litigates this appeal solely as the attorney-in-fact of Mr. Pecha. And, significantly, Defendants-Appellees do not question her authority to do so. *Cf. Bush v. Remington Rand*, 213 F.2d 456, 464 (2d Cir. 1954) (concluding that "the defendant, by its long delay in raising the issue, had waived its right to object" to failure to substitute in the district court a proper party-plaintiff upon plaintiff's death).[3] With the stage thus set, we turn to the central question of whether Mr.

---

[3] We need not consider whether ordinarily it would be advisable or even required for us to dismiss on our own initiative this appeal based on the arguable absence of a proper plaintiff-appellant—stemming from Mr. Pecha's death and Ms. Pecha-Weber's failure to move for substitution of herself, as personal representative of the estate, under Federal Rule of Appellate Procedure 43—because, ultimately, the resolution of this non-merits question is not material: even if a dismissal of this action could be appropriately based on this lack-of-proper-party ground, we may elect to determine this case on the alternative non-merits, jurisdictional basis of mootness. Federal courts have flexibility in electing among non-merits grounds for ruling on cases. *See, e.g.*, *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) ("[A] federal court has leeway 'to choose among threshold grounds for denying audience to a

(continued...)

Pecha's death mooted this case, and answer in the affirmative.[4]

## II

"[W]e apply a de novo standard of review because the case presents a question of constitutional mootness." *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1123 (10th Cir. 2010). Similarly, we review de novo issues of sovereign immunity. *See, e.g.*, *Governor of Kan. v. Kempthorne*, 516 F.3d 833, 841 (10th Cir. 2008).

### A

Ms. Pecha-Weber argues that the claim for an injunction to oblige Defendants-Appellees to declare Mr. Pecha eligible for Medicaid benefits is not mooted by his death. She argues that "[t]he District Court erroneously equated prospective injunctive relief to the payment of *future* Medicaid benefits." Aplt.'s

---

[3](...continued)
case on the merits.'" (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999))); *accord Kelley v. City of Albuquerque*, 542 F.3d 802, 817 n.15 (10th Cir. 2008). And whether we dismiss for lack of a proper plaintiff-appellant *or* resolve this case on mootness grounds, we never reach the merits of this action seeking a determination of Medicaid eligibility and the payment of three months' retrospective Medicaid benefits.

[4] We will not ruminate or opine on whether the outcome would have been different if Mr. Pecha's estate (with Ms. Pecha-Weber as personal representative) was the plaintiff-appellant. It is not. And we are not "empowered to issue" advisory opinions. *McKinney v. Gannett Co.*, 694 F.2d 1240, 1247 (10th Cir. 1982) ("Under the circumstances with which we are now confronted, were we to opt to address the allegations of error raised herein, we would surely be rendering an advisory opinion, which federal courts are not empowered to issue.").

Opening Br. at 5 (emphasis added). Instead, Ms. Pecha-Weber posits that the prospective relief she seeks is "an injunction ordering" the Defendants-Appellees "to cease denying [Mr. Pecha's] Medicaid application and coverage." *Id.* at 26. That prospective relief would in turn "allow[] Pecha to receive *past* Medicaid benefits pursuant to 42 U.S.C. § 1396(a)(34) as relief ancillary to and in furtherance of the injunction." *Id.* at 6 (emphasis added). The Defendants-Appellees respond that the district court did not err because Mr. Pecha's death moots his claim for prospective relief; consequently, in their view, no ancillary relief can be awarded.

"Mootness is a threshold issue because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction." *Rio Grande Silvery Minnow*, 601 F.3d at 1109 (quoting *Disability Law Ctr. v. Millcreek Health Ctr.*, 428 F.3d 992, 996 (10th Cir. 2005)).[5] The constitutional aspect of the mootness doctrine, at issue here, is related to the standing doctrine. Mootness is essentially "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *S. Utah*

---

[5] In addition to the constitutional dimension of mootness, which stems from Article III of the U.S. Constitution, there is a prudential dimension, which relates to the prudence—or, more precisely, the possible lack thereof—of granting relief in a particularly attenuated case where concerns of comity arise. *See Jordan v. Sosa*, 654 F.3d 1012, 1023–24 (10th Cir. 2011). Our concern here is only the threshold, constitutional aspect of mootness.

*Wilderness All. v. Smith*, 110 F.3d 724, 727 (10th Cir. 1997) (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997)).

The relevant inquiry for a question of constitutional mootness is "have circumstances changed since the beginning of litigation that forestall any occasion for meaningful relief." *Id.* Put differently, to moot a case, "interim relief or events [must] have completely and irrevocably eradicated the *effects* of the alleged violation." *Bldg. & Constr. Dep't v. Rockwell Int'l Corp.*, 7 F.3d 1487, 1491 (10th Cir. 1993) (emphasis added) (quoting *Cty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)).

Where a plaintiff seeks prospective equitable relief, such as an injunction, we have recognized that, for purposes of the mootness inquiry, "a mere showing that he maintains a personal stake in the outcome of the controversy is insufficient." *Jordan v. Sosa*, 654 F.3d 1012, 1024 (10th Cir. 2011). "[P]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any *continuing*, present adverse effects." *Id.* (omission in original) (emphasis added) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974)). Specifically, the plaintiff must show "susceptibility to *continuing* injury," *id.*, or a "likelihood of substantial and immediate irreparable injury," *id.* (quoting *O'Shea*, 414 U.S. at 499); *see Citizen Ctr. v. Gessler*, 770 F.3d 900, 906 (10th Cir. 2014) ("Because Citizen Center seeks only prospective equitable relief, past exposure to illegal conduct would not

8

establish a live controversy in the absence of *continuing ill effects*." (emphasis added)); *Beattie v. United States*, 949 F.2d 1092, 1093 (10th Cir. 1991) ("[W]hile a plaintiff who has been constitutionally injured can bring a[n] . . . action to recover damages, that same plaintiff cannot maintain a declaratory or injunctive action unless he or she can demonstrate a good chance of being likewise *injured in the future*." (omission and second alteration in original) (emphasis added) (quoting *Facio v. Jones*, 929 F.2d 541, 544 (10th Cir. 1991))); *see also Randolph v. Rodgers*, 170 F.3d 850, 856 (8th Cir. 1999) ("A claim for equitable relief is moot 'absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any *real or immediate threat* that the plaintiff will be *wronged again*.'" (emphases added) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983))).

It is beyond peradventure that the dead are not susceptible to continuing or future harm; therefore, claims for prospective (e.g., injunctive) relief brought by deceased plaintiffs ordinarily are moot. *See, e.g.*, *Tandy v. City of Wichita*, 380 F.3d 1277, 1290 (10th Cir. 2004) ("Beltz's claims for prospective relief are moot because he has died. . . . [O]nce dead, he is no longer under a real and immediate threat of repeated injury. Thus, there is no longer a live controversy with respect to Beltz's claims for prospective relief."). *Tandy*'s holding leads ineluctably to the termination of this litigation. That is, Mr. Pecha's death has mooted this case, which is based on claims for prospective relief—notably, for purposes of this

9

appeal, a claim for injunctive relief.[6]

Ms. Pecha-Weber's contention that this case is not moot rests, in principal part, on the assertion that there is an ongoing violation of federal law here—a requisite of an action for prospective equitable relief (e.g., injunctive relief) against state officials. *See, e.g.*, *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) ("In determining whether the doctrine of *Ex parte Young*[7] avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" (alteration in original) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296, (1997) (O'Connor, J., joined by Scalia and Thomas, JJ., concurring in part and

---

[6]     Although Mr. Pecha included in his complaint and amended complaint a request for a declaratory judgment, it is unnecessary to discuss or analyze whether a declaratory judgment would be available to Mr. Pecha because Ms. Pecha-Weber does not challenge the district court's dismissal of Mr. Pecha's claim for a declaratory judgment. Ms. Pecha-Weber fails to make any argument regarding declaratory relief in her opening brief (or her reply brief for that matter). Indeed, the court's order that dismissed Mr. Pecha's declaratory-judgment claim was omitted from Ms. Pecha-Weber's appendix and is in the record on appeal only because the Defendants-Appellees submitted it to us in a supplemental appendix. *See* Aplees.' Supp. App. at 1 (Order, filed July 21, 2015). "The failure to raise an issue in an opening brief waives that issue." *Anderson v. U.S. Dep't of Labor*, 422 F.3d 1155, 1174 (10th Cir. 2005); *accord Silverton Snowmobile Club v. U.S. Forest Serv.*, 433 F.3d 772, 783 (10th Cir. 2006). Therefore, even if Ms. Pecha-Weber did profess to be challenging the court's denial of declaratory relief, such a challenge would be waived.

[7]     *See Ex parte Young*, 209 U.S. 123 (1908).

concurring in judgment))); *accord Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1167 (10th Cir. 2012). Ms. Pecha-Weber views the purported existence of such an ongoing (i.e., continuing) violation as a basis for distinguishing *Tandy*. She says that, unlike in this case, in *Tandy* no continuing *violation* of federal law could occur because the city of Wichita's violation of the Americans with Disabilities Act (ADA) "occurred each time Beltz used [the] transit system," Aplt.'s Reply Br. at 3, and he could not use it after his death.

However, even if the existence of an ongoing violation of federal law were material to the resolution of this action (which it is not, as explicated *infra*), Ms. Pecha-Weber's attempt to distinguish *Tandy* on this basis would be mistaken. The violation of law that the plaintiffs alleged in *Tandy* was, *inter alia*, Wichita's "*continued use* of its *policy* of giving drivers the discretion to deny wheelchair-bound passengers access to an accessible bus on an inaccessible route." 380 F.3d at 1280 (emphases added). They "reason[ed] that this *policy* violates the ADA." *Id.* (emphasis added) (describing the district court's entry of an injunction under this reasoning). In other words, the *Tandy* plaintiffs alleged that Wichita's existing policy was noncompliant with the ADA—a violation of law independent of whether any particular plaintiff was able to attempt to ride the buses. Thus, instead of focusing on the bus-riding conduct of one individual, the *Tandy* plaintiffs centered their challenge on an existing policy that they believed represented a continuing violation of federal law. Therefore, Ms. Pecha-Weber's

11

attempt to distinguish *Tandy* for its ostensible lack of a continuing violation is mistaken.

More importantly, the existence of a continuing (i.e., ongoing) violation of federal law is immaterial to the resolution of this case. Irrespective of whether there is such a violation here, Mr. Pecha's action still has to pursue "relief properly characterized as prospective," *Verizon Md. Inc.*, 535 U.S. at 645 (quoting *Coeur d'Alene Tribe*, 521 U.S. at 296 (O'Connor, J., joined by Scalia and Thomas, JJ., concurring in part and concurring in judgment)), in the sense that it seeks to remedy a "*continuing* injury" to him, *Jordan*, 654 F.3d at 1024. And *Tandy* forcefully underscores what commonsense should already tell us: the dead, like Mr. Pecha, cannot suffer a continuing injury. Therefore, this action for injunctive (i.e., prospective) relief is moot.

**B**

Because of this conclusion regarding the mootness of Mr. Pecha's claim for injunctive relief, Ms. Pecha-Weber cannot secure any other relief in this appeal. Ms. Pecha-Weber acknowledges that she ultimately seeks a district court order for the payment of *retrospective* Medicaid benefits under 42 U.S.C. § 1396a(a)(34); she characterizes this relief as ancillary to her requested prospective relief and so permissible under *Ex parte Young*. *See* Aplt.'s Opening Br. at 17–19.

Retrospective relief against a state is barred by the Eleventh Amendment.

12

*See Quern v. Jordan*, 440 U.S. 332, 337 (1979) ("In *Edelman*[8] we reaffirmed the rule that . . . a suit in federal court by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment. . . . [U]nder the landmark decision in *Ex parte Young*, 209 U.S. 123 (1908), a federal court, consistent with the Eleventh Amendment, may enjoin state officials to conform their future conduct to the requirements of federal law, even though such an injunction may have an ancillary effect on the state treasury. The distinction between [the two] was the difference between prospective relief on one hand and retrospective relief on the other." (citations omitted)); *accord Buchheit v. Green*, 705 F.3d 1157, 1159 (10th Cir. 2012).

The Supreme Court has approved of some forms of relief against a state that it has characterized as ancillary to prospective (e.g., injunctive) relief. *See Quern*, 440 U.S. at 349 (approving the issuance of a notice "ancillary to . . . prospective relief" that "in effect simply informs class members that their federal suit is at an end, that the federal court can provide them with no further relief, and that there are existing state administrative procedures which they may wish to pursue. . . . The class members are 'given no more . . . than what they would have gathered by sitting in the courtroom.'" (second omission in original) (quoting *Jordan v. Trainor*, 563 F.2d 873, 877–78 (7th Cir. 1977))).

---

[8]     *Edelman v. Jordan*, 415 U.S. 651 (1974).

But the problem for Ms. Pecha-Weber is that, even if this court were willing to assume that her requested order for retrospective benefits under 42 U.S.C. § 1396a(a)(34) could be characterized as ancillary to an injunction obliging the Defendants-Appellees to declare Mr. Pecha eligible for Medicaid benefits, such injunctive relief—as demonstrated *supra*—is not possible. Therefore, Mr. Pecha's claim for retrospective benefits stands untethered to a claim for injunctive (i.e., prospective) relief. In other words, there is no injunctive relief to which the claim for retrospective benefits can be ancillary. Therefore, Ms. Pecha-Weber's claim for retrospective benefits as ancillary relief must fail for want of a prospective predicate.

Indeed, Ms. Pecha-Weber concedes that she cannot obtain the payment of past Medicaid benefits *unless* it is ancillary to prospective injunctive relief ordering the Defendants-Appellees to determine Mr. Pecha to have been eligible for Medicaid benefits: "OKDHS and OHCA cited *Green v. Mansour*, 474 U.S. 64, 67 (1985) for the proposition that ancillary relief cannot be awarded independent of prospective injunctive relief. *Pecha agrees*. In order to receive ancillary relief, he must be entitled to receive prospective injunctive relief." Aplt.'s Reply Br. at 5 (emphasis added).[9]

---

[9] The Court's *Green* decision—which Ms. Pecha-Weber identifies—clearly underscores the point. Specifically, it held that ancillary relief generally cannot be awarded independent of prospective relief, *see* 474 U.S. at 71–72—unless the requested relief may *also* be characterized as an "independent

(continued...)

14

Ms. Pecha-Weber's concession is determinative regarding whether an order of retrospective Medicaid benefits can survive the mooting of Mr. Pecha's claim for prospective relief. It cannot. Mr. Pecha's death mooted any claim for injunctive (i.e., prospective) relief. Thus, Ms. Pecha-Weber cannot seek ancillary retrospective benefits. The foregoing analysis disposes of this case.

## III

In sum, this action for injunctive (i.e., prospective) relief is moot because Mr. Pecha does not face a concrete threat of continuing or repeated injury to him because he is dead. This conclusion in turn bars relief in the form of retrospective benefits, which Ms. Pecha-Weber characterizes as ancillary to the requested injunction. We **AFFIRM** the district court's judgment.

Entered for the Court

JEROME A. HOLMES
Circuit Judge

---

[9](...continued)
form of relief," *id.* at 71, that is able to "stand on its own feet as an appropriate exercise of federal jurisdiction," *id.* at 74, consistent with the Eleventh Amendment. Ms. Pecha-Weber has not attempted to establish that the order of retrospective benefits she seeks stands on its own feet as an independent form of relief valid under the Eleventh Amendment. Therefore, we have no occasion to explore that possibility here.

FILED
United States Court of Appeals
Tenth Circuit

July 25, 2017

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ALFRED PECHA, by and through Patty
Pecha-Weber, Next Friend and attorney-in-
fact,

      Plaintiff - Appellant,

v.

ED LAKE, Director of Oklahoma
Department of Human Services; JOEL
NICO GOMEZ, Director of Oklahoma
Health Care Authority,

      Defendants - Appellees.

No. 16-6143

_____

**PUBLISHED CONCURRENCE**
_____

**HARTZ,** Circuit Judge, concurring:

     In its unpublished opinion, *Pecha v. Lake*, No. 16-6143 (10th Cir. July 25, 2017),

the panel majority fails to follow the lead of a prior panel of this court and correct the

most harmless of technical errors—failure to substitute the estate of a decedent as the

party before us. It then somehow manages to handle this appeal as if a deceased person

could be a party, but not with respect to some claims (I am not sure what they are) that

his estate could raise—thereby avoiding a core argument addressed by the parties and

providing no guidance to future litigants on an important issue that can be easily

resolved. In this concurrence I will discuss the procedural background of the case, the

technical errors, the proper way to deal with those errors, and why the claim must nevertheless be dismissed as moot because of the limitations imposed on the federal district court by the Eleventh Amendment.

The original complaint was filed on behalf of 97-year-old Alfred Pecha by his niece, Patty Pecha-Weber, acting as next friend and attorney-in-fact (under a power of attorney). The complaint claimed that the state-official defendants had unlawfully refused to determine that Mr. Pecha was eligible for Medicaid benefits. Among other things, it sought a declaratory judgment and an injunction ordering the defendants to cease denying coverage and ordering that they certify him as eligible for coverage from the date of his requested eligibility and "pay Medicaid benefits accordingly." Aplt. App., Vol. I at 14. The defendants moved to dismiss the complaint on several grounds, including sovereign immunity under the Eleventh Amendment. They argued that the Eleventh Amendment prohibited the federal court from issuing a declaratory judgment or ordering payment of any past Medicaid benefits. The district court granted the motion as to the declaratory judgment but ruled that if the court granted an injunction ordering the defendants to certify Mr. Pecha as eligible for Medicaid benefits, the Eleventh Amendment would not prohibit extending three months of pre-*injunction* benefits, as provided in 42 U.S.C. § 1396a(a)(34) (providing for three months of pre-*application* eligibility for benefits in certain circumstances).

Unfortunately, Mr. Pecha died during the litigation. The defendants then filed a Suggestion of Mootness and Motion to Dismiss because of his death. In response, Ms. Pecha-Weber, now acting in the capacity of personal representative of Mr. Pecha's estate

2

(she attached the state-court order naming her as personal representative), filed a motion for substitution of parties (replacing Mr. Pecha by his estate) under Fed. R. Civ. P. 25. She also argued against the defendants' suggestion of mootness, contending that if the court granted the injunction requiring defendants to certify Mr. Pecha's Medicaid eligibility, "Pecha's estate still [would have] the ability to recover Medicaid benefits back to their application date since they would be ancillary to and in furtherance of [the injunction]." Aplt. App. Vol. III at 450. The defendants objected to the substitution of the estate as a party, essentially on the ground that the estate's claim was mooted, at least in federal court, by Mr. Pecha's death. They argued that the Eleventh Amendment barred the federal court from granting any ancillary relief (such as the payment of past benefits) once Mr. Pecha's death mooted any claim for prospective relief.

The first technical error was that the district court did not grant the motion to substitute the estate as the plaintiff. It did not address the motion to substitute at all, but it granted the defendants' motion to dismiss, in effect denying the motion to substitute. The court may have thought that substitution of parties was unnecessary because the case was moot anyway. Without substitution, however, there would be no proper plaintiff to take an appeal challenging the district court's mootness ruling. The failure to grant the motion to substitute was an undeniable abuse of discretion. The merits of the claim is not a proper consideration in resolving such a motion. *See* 7C Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Richard L. Marcus, A. Benjamin Spencer & Adam N. Steinman, Federal Practice and Procedure § 1956, 691 (3d ed. 2017) ("Wright & Miller") ("The court will not resolve the merits of the controversy in passing on a motion for

3

substitution."). And denial of a timely motion to substitute, as in this case, can be justified only in extreme circumstances. "'[I]t is difficult to imagine a case where discretion might properly be exercised to deny a motion to substitute for a deceased plaintiff made within the rule's time limits.'" 6 James Wm. Moore et al., Moore's Federal Practice §25.12[4] (3d ed. 2017) (quoting *Saylor v. Bastedo*, 623 F.2d 230, 237 (2d Cir. 1980)). As stated in Wright & Miller, "There appears to be only one reported case under [the 1963 amendment to Rule 25(a)(1)] in which substitution has been denied when the motion was made within the 90-day period [after service of a statement of death]," 7C Wright & Miller § 1955 at 686; and in that case the party had been tardy in many respects, including in serving a statement of death, *see Ashley v. Ill. Cent. Gulf R.R. Co.*, 98 F.R.D. 722, 724 (S.D. Miss. 1983).

The second technical error was the failure of counsel for Ms. Pecha-Weber (as personal representative of the estate) to appeal the denial of the motion to substitute. This likely was an oversight. Counsel began oral argument in this court by stating that he was representing Mr. Pecha and his estate. The failure to substitute parties was then raised by the panel during the argument. The oversight had not been noted in the defendants' pleadings on appeal. They did not rely in their briefing on the absence of the substitution of parties. As set forth in the following footnote, the defendants' 20-page brief repeatedly argued as if the estate were a party on appeal.[1]

---

[1] "The District Court granted Defendants' motion [to dismiss for mootness], holding that *Mr. Pecha's estate's sole interest*—the award of ancillary monetary relief in the form

4

The proper way for this court to deal with the technical errors is simple and straightforward. We should sua sponte substitute Mr. Pecha's estate as the plaintiff-appellant. That is what this court did in *Copier v. Smith & Wesson Corp.*, 138 F.3d 833, 834 n.1, 835 (10th Cir. 1998). Plaintiff's counsel in that case had not moved to substitute parties in the district court (the plaintiff died during district-court proceedings) or on

of a retroactive payment of back benefits—could not be awarded in the absence of a viable claim for prospective injunctive relief." Aplee. Br. at 3 (emphasis added).

"While *Mr. Pecha's estate* may have appropriate recourse in the Oklahoma state courts, in the wake of Mr. Pecha's death, *it cannot seek in a federal court* the retroactive payment of benefits it believes may be owed without running afoul of the Eleventh Amendment bar." *Id*. at 5 (emphasis added).

"Simply put, Mr. Pecha's death moots his claims for prospective injunctive relief. As a result, *his estate's interest in the retroactive payment of past benefits* ancillary to the entry of prospective injunctive relief cannot be awarded consistent with the Eleventh Amendment." Id. (emphasis added).

"Instead, *his estate's only remaining interest* is in the award of ancillary relief in the form of a retroactive payment of past benefits, which cannot be ordered without running afoul of the Eleventh Amendment." *Id*. at 9 (emphasis added).

"While Oklahoma state law may shed light on whether *Mr. Pecha's estate may or may not have an action in state court* in the wake of Mr. Pecha's death, it is not determinative of Eleventh Amendment limitations on the District Court to grant retroactive relief in this case." *Id*. at 10–11 n.9 (emphasis added).

"Without the possibility of prospective relief, *Mr. Pecha's estate's remaining interest in this litigation* is indistinguishable from a claim for retroactive monetary relief—i.e., damages—and is barred by the Eleventh Amendment." *Id*. at 11 (emphasis added).

"Because *Mr. Pecha's estate's only interest at this stage* is in the retroactive award of past Medicaid benefits, and because such relief must be tied to an award of prospective injunctive relief that can no longer be granted in this case, the District Court properly dismissed the Amended Complaint." *Id*. (emphasis added).

"Only if this Court first decides that the case was improperly dismissed and remands the case to the District Court, and if the District Court then finds in Mr. Pecha's favor on the issue of liability, and if the District Court *then enters an order compelling DHS and OHCA to pay Mr. Pecha's estate retroactive benefits*, will the issue be one ripe for consideration by this Court on appeal." *Id*. at 13–14 (emphasis added) (emphasis in original omitted).

5

appeal. The equities here are much more favorable to Mr. Pecha's estate, because it did everything it should have in district court, and the matter should have been properly dealt with there. Our substitution of parties would create zero unfair prejudice to the defendants.

Instead of proceeding in that manner, the majority opinion "conduct[s] [its] analysis as though Mr. Pecha were the sole plaintiff before us." O&J at 5. It notes that the defendants have not questioned Ms. Pecha-Weber's authority to proceed as the attorney-in-fact of Mr. Pecha. I am confused by what that means, because the majority does not explain how a deceased person can be represented by counsel or can be a party and, if so, what sort of relief can be granted to a deceased person (as opposed to the decedent's estate). In particular, the majority opinion states that it "will not ruminate or opine on whether the outcome would have been different if Mr. Pecha's estate (with Ms. Pecha-Weber as personal representative) was the plaintiff-appellant." O&J at 6 n.4. But it does not suggest what might be different if the estate were the appellant. We are just left with a hint that somehow the result might change if, in future cases, there was a substitution of parties.

As support for proceeding as it does, the majority cites the Second Circuit opinion in *Bush v. Remington Rand*, 213 F.2d 456 (2d Cir. 1954). The majority reads that opinion as "concluding that 'the defendant, by its long delay in raising the issue, had waived its right to object' to failure to substitute in the district court a proper party-plaintiff upon plaintiff's death." O&J at 5 (quoting *Bush*, 213 F.2d at 464). The majority's statement is essentially correct. But it ignores what happened in that case as

6

the result of the waiver. The defendant-appellant had sought to dismiss the claims against it because the estate had not been substituted for the decedent within the two-year time limit of the then-current version of Rule 25. *See Bush*, 213 F.2d at 463. What was waived was the right to obtain a dismissal. The waiver did not lead the *Bush* court to somehow treat the decedent as a party, which is what the majority does here. Rather, *Bush* ruled that as a result of the waiver, the district court had proceeded properly by, among other things, adding the administratrix of the estate as a party. *See id.* at 464. The circuit court then resolved the case just as if the proper parties had been substituted all along. We should do the same.

In contrast to the length of the above preliminary material, the merits of the mootness issue can be dealt with briefly. "In deciding whether a case is moot, the crucial question is whether granting a present determination of the issues offered will have some effect in the real world." *Kan. Judicial Review v. Stout*, 562 F.3d 1240, 1246 (10th Cir. 2009) (brackets, ellipsis, and internal quotation marks omitted); *see also Phelps v. Hamilton*, 122 F.3d 885, 891 (10th Cir. 1997) ("inability to grant effective relief renders . . . issue moot"). Appellant concedes that no future Medicaid benefits can be due. But she asserts that the case is not moot because of the prospect of receiving past benefits, which would be relief ancillary to a court order requiring that Mr. Pecha's Medicaid application be approved.

If this proceeding were in state court, this argument might well be correct. In federal court, however, an award of past benefits is barred by the Eleventh Amendment absent any continuing violation of federal law justifying injunctive relief. The doctrine is

7

explained in *Green v. Mansour*, 474 U.S. 64 (1985), where the Supreme Court considered two consolidated class actions challenging Michigan's denial of benefits under the federal Aid to Families With Dependent Children (AFDC) program. One suit complained that the State was not deducting child-care expenses in computing a potential beneficiary's income. The other complained that the State included stepparent income in the computation. After the suits were brought, federal law was changed to allow deductions for child-care expenses and to require inclusion of stepparent income. *See id.* at 66–67. The State thereafter clearly complied with federal law, so the district court vacated its preliminary injunction. It then dismissed the cases as moot although the plaintiffs had pending claims (1) for declarations that Michigan officials had improperly denied benefits in the past and (2) for notice relief, requiring state officials to provide notices to AFDC applicants informing them that state administrative procedures were available to determine whether they were eligible for past benefits. *See id*. The Supreme Court held that the dismissal was correct.

The Court noted that since *Ex parte Young*, 209 U.S. 123 (1908), it had "held that the Eleventh Amendment does not prevent federal courts from granting prospective injunctive relief to prevent a continuing violation of federal law." 474 U.S. at 68. On the other hand, retrospective relief is not permissible. *See id.* The Court recognized that it had permitted declaratory relief complementing a permanent injunction against current violations of federal law; but in that circumstance the declaratory judgment had no legal effect beyond that of the injunction. *See id.* at 69–70 & n.1. Absent any ground for a continuing injunction, however, a declaratory judgment would be barred by the

8

Constitution. The Court explained that issuing a declaratory judgment would be tantamount to granting retrospective relief because its sole purpose would be to bind a state court under preclusion principles:

> There is a dispute about the lawfulness of respondent's past actions, but the Eleventh Amendment would prohibit the award of money damages or restitution if that dispute were resolved in favor of petitioners. *We think that the award of a declaratory judgment in this situation would be useful in resolving the dispute over the past lawfulness of respondent's action only if it might be offered in state-court proceedings as res judicata on the issue of liability, leaving to the state courts only a form of accounting proceeding whereby damages or restitution would be computed. But the issuance of a declaratory judgment in these circumstances would have much the same effect as a full-fledged award of damages or restitution by the federal court*, the latter kinds of relief being of course prohibited by the Eleventh Amendment. . . . [A] declaratory judgment is not available when the result would be a partial "end run" around our decision [barring a federal district court from ordering retroactive benefits].

*Id.* at 73 (emphasis added).[2]

Although the issue in our case is not the propriety of a declaratory judgment, the governing doctrine is clear. I see no way that the grant of any relief here could avoid the prohibition of *Green*. Because Mr. Pecha has died there could be no continuing violation of federal law with respect to his benefits. If, as Appellant seems to argue, the continuing refusal to pay past benefits constitutes a "continuing violation" that can be corrected, then the Eleventh Amendment bar on retrospective relief would be an illusion. Every failure to pay retrospective damages could be characterized as a continuing failure to do what is

---

[2]      Notice relief was also unavailable. The Court acknowledged that "a request for a limited notice order will escape the Eleventh Amendment bar if the notice is ancillary to the grant of some other appropriate relief that can be 'noticed.'" *Id.* at 71. But in that case there was "no continuing violation of federal law to enjoin," so "an injunction [was] not available." *Id.* "Therefore, notice [could not] be justified as a mere case-management device that is ancillary to a judgment awarding valid prospective relief." *Id.*

9

right.  The injunction sought here—requiring the defendants to certify a deceased man as eligible for benefits—can have no effect on future benefits.  What is desired by an order requiring the defendants to certify Mr. Pecha's Medicaid eligibility is, in essence, a federal-court judgment that "might be offered in state-court proceedings as res judicata on the issue of liability, leaving to the state courts only a form of accounting proceeding whereby damages or restitution would be computed."  *Id.*  But that is barred by the Eleventh Amendment because it "would have much the same effect as a full-fledged award of damages or restitution by the federal court."  *Id.*; *see Tarrant Reg'l Water Dist. v. Sevenoaks*, 545 F.3d 906, 911 (10th Cir. 2008) ("[W]hen the requested relief is akin to a retrospective damages award, *Ex Parte Young* is inapplicable and the Eleventh Amendment prohibits the federal suit.").

Thus, even if Mr. Pecha's estate is substituted as the plaintiff, no relief is available in federal court (regardless of whether Mr. Pecha was Medicaid eligible) so the case is moot.  I therefore concur in the result.

Unfortunately, the majority opinion is not being published.  I would think that it merits publication under 10 Cir. R. 36.2 because the manner of disposition of this case is apparently unprecedented.